Allen H. CUNHA, Jr., George L. Gonsalves, Richard C. Lowry, Janet Leuenberger, Leoda Aguair, Joseph W. Alana, Jr., Haruye Anamizu, Joseph Cabral, Hilton W. C. Chong, Bernard L. Galdeira, C. Elaine Jackson, Herbert S. Kruse, Alvin L. Medeiros, Mineo Murakami, Ricardo Ronolo, Randolph K. Ahuna, Anita K. Amai, Albert L. Botelho, S. E. Cadinha, Richard C. Chong, Eleanor S. Furukawa, Richard H. Ginoza, R. E. Hughes, Judith Kamalii, Ned N. Matsuyama, Samuel Min, Elizabeth H. Okamoto, Joseph F. Santos, George Splinter II, Ruth T. Ung, Wilfred Woo, George Yomes, Joseph T. Imai, Henry H. Harada, David Holmes, Herbert K. D. NG, Isaac Kaai, Jr., Judy M. P. Tsutsui, John T. Watanabe, Doris H. Yoshimoto, Norman S. Teruya, David W. Chang, Joseph K. Puou, Alexander C. Torres, William K. Chong, and Sadie W. Tashima, Plaintiffs,

v.

WARD FOODS, INC. and The Wyatt Company, Defendants.

Civ. No. 77-0306.

United States District Court, D. Hawaii.

Oct. 17, 1980.

832

Larry L. Myers, Alan Van Etten, Fong, Miho & Robinson, Edward C. Kemper, Thomas T. Watts, Kemper & Watts, Honolulu, Hawaii, for plaintiffs.

Edmund Burke, William H. Gilardy, Jr., Burke, McPheeters, Bordner & Gilardy, Honolulu, Hawaii, for The Wyatt Company.

Roger W. Fonseca, Torkildson, Katz, Jossem & Loden, Honolulu, Hawaii, for Ward Foods, Inc.

### MEMORANDUM AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT EXCEPT AS TO COUNT III OF THE SECOND AMENDED COMPLAINT

SAMUEL P. KING, Chief Judge.

In June 1964, the Honolulu Iron Works ("Honiron") adopted a "funded" pension for its employees.[1] The new plan went into effect on or about May 1, 1964, and was described in the company newspaper and in a pamphlet distributed to employees. In the company newspaper, employees were informed *"that no disaster or change of management can reduce or eliminate your pension."* (emphasis in original). Employees were also assured that the payments made to the fund *"must be used for the benefit of the employees and can never revert to the company."* (emphasis in original). Participants contributed to the plan at the rate of three and one-half percent (3½%) of their wages in excess of four hundred dollars ($400) per month. All the plaintiffs were participants from the plan's inception.

In January 1966, defendant Ward Foods, Inc. ("Ward") acquired Honiron and amended and adopted the plan. Participants contributed to the plan until September 1971 when the plan was amended to eliminate *future contributions.* Ward, through Honiron, was bound to make all contributions necessary to maintain the plan in full force under the Internal Revenue Code. Ward retained the right to terminate the plan subject to distribution of the funds according to rights that vested immediately upon termination.

Ward divested itself of Honiron in January 1973 and formal termination of most employees, including plaintiffs, was completed by September 1973. At that point, the plan was still in effect. On August 27, 1964, Mr. Richard H. Forster of defendant Wyatt Company ("Wyatt"), the pension plan actuary, wrote the Honiron division treasurer informing him that if Ward terminated after July 1, 1974, and before the effective date for the soon-to-be-enacted Employee Retirement Income Security Act (ERISA), (1) the Pension Benefit Guarantee Corporation (PBGC) to be established under ERISA would guarantee the accrued plan benefits, and (2) Ward would escape certain liabilities imposed by ERISA. Wyatt suggested that Ward make a decision. On August 31, 1974, Ward's Board of Directors terminated the plan.

Ward applied for PBGC's guarantee and was rejected. The PBGC found that Ward had not provided substantial evidence of a reasonable business purpose for termination as required under ERISA, 29 U.S.C. § 1381(b) (1975). The evidence instead indicated that Ward had terminated the plan for the disqualifying purpose of obtaining the guarantee and avoiding liability. The

---

1. This plan represented a major change from Honiron's previous "Kanaka" Plan that paid pensions out of current income and was dependent upon the financial situation of the company.

employees, including plaintiffs, received notice of this action in January 1976.

Plaintiffs brought this suit against Ward and Wyatt raising several common law claims based on negligence and misrepresentation, unjust enrichment, breach of contract, breach of fiduciary duty and various breaches of obligations to manage and contribute to the fund properly. The complaint was filed on July 11, 1977, in The Circuit Court of the First Circuit, State of Hawaii, and removed to this Court on diversity grounds. In early 1978, both defendants made motions for summary judgment. By Order of September 5, 1978, this Court denied the motions for summary judgment except as to the claim based on unjust enrichment. After two years of discovery and two amendments to the complaint, Ward again has moved for summary judgment.

Plaintiffs filed a second amended complaint on January 3, 1980. That complaint contains 24 counts that conveniently can be considered in seven categories: (1) state common law claims based on tortious acts, (2) state common law claims based on breach of contract, (3) state common law claims based on failure to manage and/or fund the plan properly, (4) federal securities claims, (5) state securities claims, (6) state claims based on unfair trade practices, and (7) violations of ERISA. The various claims were raised against one or both defendants and defendants have raised statute of limitations defenses.

### 1. State Common Law Claims Based on Tortious Acts

■ Plaintiffs allege that Wyatt, by its advice about termination and the PBGC benefits, is liable for negligence, misrepresentation, the unauthorized practice of law and tortious interference with a prospective advantage. In general, plaintiffs' claims are based on Wyatt's influence on Ward to terminate the plan and on the inaccuracy of Wyatt's advice that the plan would be covered under the PBGC. As to all but one of these counts, defendant's motion must be denied. The outcome here is dependent

wholly upon the facts and those are still in dispute. As to Count III of the second amended complaint (alleged unauthorized practice of law), defendant's motion is granted. Under Hawaii Rev.Stat. § 605–15.1 (1976), only the Attorney General or bar association of the state has standing to bring an action for violation of Hawaii Rev. Stat. § 605–14 (1976) (unauthorized practice of law). *See Reliable Collection Agency v. Dole,* 59 Haw. 503, 584 P.2d 107 (1978).

### 2. State Law Claims Based on Breach of Contract

■ Plaintiffs contend that Wyatt's alleged misrepresentations constituted a breach of the pension plan contract of which plaintiffs were third–party beneficiaries, and that Ward's refusal to pay benefits constituted a breach. Further, they allege that Ward breached a contract of the union of which some plaintiffs were members. According to plaintiffs, the contract provided for no termination before June 30, 1977. In its Order of September 5, 1978, this Court discussed the use of the company newspaper and the pamphlets as they affected the plan contract and Ward's alleged absolute right to terminate the plan. This Court concluded that the circumstances posed genuine issues of material fact and denied Ward's motion for summary judgment. Those issues remain in dispute and this motion must be denied as to them.

### 3. State Law Claims Based on Failure to Manage and Fund Properly

■ Plaintiffs claim that Wyatt failed to make actuarial calculations for the 1974 contributions to the plan and that Ward is liable for breach of fiduciary duty in managing the plan and for inadequate funding of the plan. Plaintiffs also claim that, prior to the termination of the plan, Ward violated the terms of the plan by paying a pension to those who reached age 55 and not paying those who reached age 45 and had ten years of service. Ward denies these claims and the issues remain in dispute.

#### 4. *Federal Securities Claims*

Plaintiffs allege violations of the following federal securities laws: (1) Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1971) and Rule 10b–5 promulgated under it, (2) Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e (1971), (3) Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (1971), and (4) Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1971). All of these claims involve allegations about defendants' conduct and motives in terminating the plan.

■ Defendants claim that plaintiffs' interests in the pension plan are not securities covered by the federal laws. They rely on the recent decision of the Supreme Court of the United States in *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), to support that contention. The Supreme Court held that the Securities Act and Securities Exchange Act do not apply to a noncontributory, compulsory pension plan, reasoning that such interests do not constitute investment contracts under *SEC v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The test, under *Howey*, is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." 328 U.S. at 301, 66 S.Ct. at 1104. *See also Tanuggi v. Grolier, Inc.*, 471 F.Supp. 1209 (S.D.N.Y.1979). The Supreme Court also reasoned that an employee who makes no decision to participate and no contribution cannot be making an investment decision. However, the Court left open the question for plans that are voluntary and/or contributory.

Defendants argue that the Honiron plan was mandatory and non–contributory. While it is undisputed that the plan was non–contributory at the time of termination, it was clearly contributory at its inception when all the plaintiffs joined the plan. Therefore, plaintiffs made contributions from 1964 to 1971. The plan, by its terms, speaks of participants, not all employees, and plaintiffs claim participation was voluntary while defendants claim it was mandatory. This disputed factual issue is crucial to determining whether the pension plan holdings were securities at the time of termination. The remaining issues in the securities claims–possible material misrepresentations in connection with the purchase or sale of a security, possible securities registration violations, untrue statements or omissions in describing the securities and possible fraudulent interstate transactions–all involve disputed factual issues.

■ Plaintiffs also allege that Wyatt violated Section 206 of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–6 (1971), that prohibits certain types of transactions by investment advisors. Plaintiffs allege that Wyatt's advice to Ward violated this section and the issues are still in dispute.

#### 5. *State Securities Claims*

■ Plaintiffs allege violations of Hawaii Rev.Stat. § 485–25 (1976) (fraudulent and other prohibited practices in connection with the offer, sale or purchase of any security) and Hawaii Rev.Stat. § 485–8 (1976) (violation of securities registration requirements). As under the federal securities laws, plaintiffs must show that their interests are securities. The Supreme Court of Hawaii rejected the *Howey* test in *State v. Hawaii Market Center, Inc.*, 52 Haw. 642, 485 P.2d 105 (1971), and devised its own four–part analysis. The Court held that, for purposes of the state securities laws, an investment contract is created whenever:

(1) an offeree furnishes initial value to an offeror, and

(2) a portion of this initial value is subjected to the risks of the enterprise, and

(3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and

(4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise.

*Id.* at 649, 485 P.2d 105.

The court expressed its intention to define security to allow "the necessary broad coverage to protect the public from the novel as well as the conventional forms of financing enterprises." *Id.* Under this test, plaintiffs could establish that their interests were securities under their version of the facts still in dispute.

6. *State Claims Based on Unfair Trade Practices*

■ Plaintiffs allege violations of Hawaii Rev.Stat. § 480–2 (1976) that prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. In order for plaintiffs to sue for a violation of section 480–2, they must show either that defendant is a "merchant" or that the suit would be in the public interest. *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. ——, 607 P.2d 1304, 1312 (1980). Plaintiffs could show that a violation of federal and/or state securities laws satisfies the public interest requirement. Also, absent a specific test for the public interest requirement, this Court previously has held that "within the broad limits of an activity that (1) affects more persons than those directly involved in the transaction and (2) is substantial enough to justify public scrutiny, a jury could find that a suit based on the actions here is in the public interest." *Diamond West Development v. Hunt Knight Partnership*, Civil No. 79–0596, slip op. at 2 (D.Haw., Oct. 2, 1980). Under plaintiffs' version of defendants' conduct, it is clear that this requirement could be met.

7. *ERISA Violations*

■ Plaintiffs claim that, although Ward formally terminated the plan on August 31, 1974, Ward, in fact, continued to contribute to the plan, making it subject to ERISA. After the effective date of ERISA, plaintiffs claim, Ward violated 29 U.S.C. § 1082 (1975) (minimum funding requirements) and 29 U.S.C. § 1109 (1975) (fiduciary duty requirements). The single fact of continued contribution is disputed and material to the outcome.

*Statutes of Limitation Defenses*

Defendants claim that the statutes of limitation began to run on all claims as of the date of termination of the pension plan, *i. e.*, either August 31, 1974, when the plan was formally terminated or September 24, 1974, when the employees were informed. This action was filed on July 11, 1977, in state court and later removed to this Court on diversity grounds.

Plaintiffs contend that, under the doctrine of "lulling", the statutes of limitation did not begin to run until January 1976 when plaintiffs were informed that no PBGC insurance benefits were available and, therefore, had their first notice of wrongful termination. In *Mauian Hotel, Inc. v. Maui Pineapple Co., Ltd.*, 52 Haw. 563, 481 P.2d 310 (1971), the Supreme Court of Hawaii held that any actions by a party tending to lull another into inaction and permit the statute of limitations to run against him fell within the lulling exception. Here, plaintiffs claim that they cooperated with Ward to obtain PBGC insurance benefits thinking all along that such benefits were forthcoming. Now Ward argues that plaintiffs should have filed suit right after termination.

■ Plaintiffs also have alleged fraudulent concealment of the true nature and termination of the plan and of Ward's efforts to secure PBGC benefits. The fraudulent concealment doctrine is applied to tolling of statutes of limitation under Hawaii Rev.Stat. § 657 -20 (1976) that provides for a six–year statute of limitations commencing when a party discovers or should have discovered a cause of action when fraudulent concealment is shown. Here, plaintiffs have alleged and defendants dispute such activity. On the state law claims, the possibility that plaintiffs could show lulling or fraudulent concealment is sufficient to avoid summary disposition on the statutes of limitation defenses.

As to the federal securities claims, "[D]etermining the point at which the statutory period commences is a matter of federal common law." *Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir. 1975). *See also Cook v. Avien, Inc.*, 573 F.2d 685, 694 (1st Cir. 1978). Under the federal equitable tolling doctrine, active concealment of fraudulent conduct or reasonable lack of discovery absent active concealment tolls the statute of limitations, *Robertson v. Seidman and Seidman*, 609 F.2d 583, 593 (2d Cir. 1979); *Cook* at 695; *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C. Cir. 1977) *Tomera* at 509–510. This doctrine applies to securities claims, *Robertson* at 593; *Cook* at 695.

The Rule 10b–5 and section 17(a) securities claims have no statute of limitations. Using the resemblance test, the state statute closest to the 10b–5 action determines the appropriate statute of limitations. *Tomera* at 508. In Hawaii, no statute of limitations is provided under the Uniform Securities Act. Therefore, the general six–year statute of limitations for all personal actions not specifically covered by another law applies here. Hawaii Rev. Stat. § 657–1 (1976). This period applies to the state securities claims and to the Rule 10b–5 and section 17(a) claims.

The section 12(2) securities claim for recovery of consideration paid for securities sold in violation of section 5 is subject to a one–year statute of limitations beginning after the discovery of the untrue statement or omission, or after such discovery should have been made with the exercise of reasonable diligence, 15 U.S.C. § 77m (1971). Plaintiffs' claim, viewed under the doctrine of fraudulent concealment, is interpreted here for purposes of summary disposition as a claim that the January 1976 date (when plaintiffs were informed of non–coverage under PBGC) is the earliest plaintiffs could have known of the concealment. It is not clear at this point whether that is the same time plaintiffs discovered the possible violations.

Defendants also argue that Hawaii Rev.Stat. § 657–11 (1976) bars the Rule 10b–5 and section 17(a) actions. That section provides:

Whenever any federal statute provides for an imposition of a civil penalty or liquidated damages or imposes a new liability or enlarges any existing liability and the statute does not specify the period within which suit to recover the penalty, liquidated damages, or any sum arising out of any new or enlarged liability may be brought, the suit, if brought in a state court, shall be commenced within one year from the date the cause of action arises or be thereafter barred.

Plaintiffs argue that this section does not apply to Rule 10b–5 and section 17(a) claims because (1) the federal statutes do not impose "new liability" since there are similar state blue–sky laws, and (2) this action is not in state court. This Court accepts both of plaintiffs' arguments for purposes of summary disposition.

It is clear that summary disposition is inappropriate on any of the statutes of limitation defenses.

Accordingly, IT IS HEREBY ORDERED that summary judgment is DENIED, except as to Count III (unauthorized practice of law) as to which partial summary judgment is GRANTED.