Allen H. CUNHA, Jr., et al., Plaintiffs,

v.

WARD FOODS, INC., et al., Defendants.

Civ. No. 77–0306.

United States District Court,
D. Hawaii.

June 21, 1982.

Larry L. Myers, Edward C. Kemper, Thomas T. Watts, Kemper & Watts, Honolulu, Hawaii, for plaintiffs.

Robert S. Katz, Honolulu, Hawaii, for Ward Foods, Inc.

Willson C. Moore, Jr., Honolulu, Hawaii, for Wyatt Co.

## OPINION AND ORDER

SAMUEL P. KING, Chief Judge.

This case is before the Court again on cross-motions for summary judgment on various of the counts in the complaint. I have fully outlined the facts of the case in my prior opinion at 501 F.Supp. 830 (D.Hawaii 1980) and, therefore, will not repeat them here. In that earlier opinion, I declined to grant summary judgment on some of the counts that are before me again today on the grounds that issues of material fact remained to be resolved. In making the present motions, the parties have now agreed that these issues are ripe for decision by the Court as matters of law.

The plaintiffs have moved for summary judgment on Counts X, XI and XII. The defendant Ward Foods has moved to dismiss or, alternatively, for partial summary judgment on Counts X through XXII [1], and Count XXIV. The motions have been fully briefed and argued, and the parties have submitted affidavits and exhibits to the Court.

---

1. The Court has already ruled on the motion to dismiss Count XXII. Plaintiffs have conceded that the Supreme Court foreclosed any private right of action under the Investment Advisors Act of 1940 by its decision in *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Count XXII accordingly has been dismissed.

### Counts X and XXIV

Count X alleges a breach of contract in defendant Ward Foods' refusal to allocate to plaintiffs a pro rata share of pension fund assets upon the termination of the HonIron Pension Plan. Count XXIV alleges violations by Ward Foods of the minimum funding requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

The factual basis for plaintiffs' claim on Count X is undisputed. Article XIII of the HonIron Pension Plan provides that, upon plan termination, retired employees have a priority to benefits over all other employees up to 100% of the fund's assets. Any funds remaining after distribution to the retirees are to be allocated equally to two other classes of employees: those who have reached the optional early retirement age of 55 (the "55 + group"), and those who are between 45 and 55 with ten years of service (the "45 & 10 group").

When the Pension Plan was terminated on August 31, 1974, there were enough assets to pay some, but not all, of the benefits accrued by the retirees, but no assets to pay the 55 + group or the 45 & 10 group. After the Plan's termination, Ward Foods then took the remaining assets in the fund earmarked for the retirees, added funds of its own, and purchased annuity contracts from the Bankers Life Insurance Company for both the retirees and the 55 + group designed to provide those employees with retirement benefits equivalent to those that they would have received had there been sufficient assets in the fund at termination. The 45 & 10 group, of which the plaintiffs are a part, were not provided with such benefits.

Plaintiffs now claim that, under the liquidation and distribution provisions of Article XIII of the Plan, they are entitled to an equal or pro rata share of the benefits provided to the 55 + group by the Bankers Life annuity contracts. They allege that the funds provided by Ward Foods to purchase the annuity contracts were, in fact, contributions to the trust fund that were consequently subject to the distribution requirements of the Plan.

■ The plaintiffs' claim rests on the assumption that Ward Foods' post-termination contributions were assets of the trust fund. Under Article XIII, at termination only those "assets of the Plan *then held* in the Trust Fund shall be liquidated and distribution shall be made *to the extent funds are available* [emphasis added]." The meaning of this language is clearly that the distribution requirements apply only to those assets in the fund at the time of termination and liquidation. Since it is undisputed that Ward Foods contributed the additional funds to purchase the annuity contracts *after* the trust fund was liquidated, I find as a matter of law that the distribution requirements of Article XIII do not apply to any of those funds. Furthermore, since there were not enough assets in the trust fund at the time of liquidation even to pay benefits to all the retirees, neither the 55 + group nor the 45 & 10 group (including plaintiffs) would have been entitled to participate in the distribution of the liquidated fund assets.

■ Plaintiffs have claimed that Ward Foods made certain guarantees to the 55 + group that it would provide pension benefits to that class of employees, but not to the 45 & 10 group, and that those guarantees violated Ward Foods' contractual obligation to provide equal benefits to the plaintiffs. I fail to see, however, what relevance these guarantees, if any, have to *plaintiffs'* rights under the Plan. The plaintiffs' contractual rights are defined by the terms of the Plan, and any promises Ward Foods might have made to the 55 + group do not alter those rights. Moreover, as Ward Foods rightly points out, its motivation for providing benefits to the 55 + group, but not to the plaintiffs, is not material to plaintiffs' claims.

Finding that the plaintiffs have no right to participate in the distribution of the assets that Ward Foods provided after the termination of the Pension Plan, I therefore GRANT defendant Ward Foods' Motion for Partial Summary Judgment, and DENY

plaintiffs' Motion for Partial Summary Judgment, as to Count X.

■ Count XXIV raises the alternative claim that Ward Foods' undertaking to provide the funds enabling all the retirees and 55 + group to receive pension benefits constituted a *de facto* continuation of the Pension Plan beyond August 31, 1974 and a violation of the minimum funding requirements of ERISA. Although the factual basis of the claim is slim, I nevertheless find that the plaintiffs have at least raised a genuine issue of fact regarding the continuation of the Pension Plan. I therefore DENY Ward Foods' Motion for Partial Summary Judgment with respect to Count XXIV.

### Count XI

■ Count XI alleges that Ward Foods' termination of the Pension Plan constituted a breach of the agreement because it was done without prior notice to the plan participants. The claim is based on the allegation that one provision in Article XIII of the Plan—giving the company "the right to change, modify, amend, suspend, or discontinue the Plan at any time *except as modified by any Labor Agreement between the Company and the Union* [emphasis added]"—required that the Plan be read in conjunction with certain labor agreements between HonIron and its unions that prohibited unilateral termination of the Plan without prior notice to all parties.

Ward Foods asserts, however, that the notice provisions in the labor agreements, by their terms, apply only "[w]ith respect to those employees in the respective collective bargaining units represented by" the unions which are parties to the agreements. Since the plaintiffs were not members of the unions, defendant argues that the notice provisions of the labor agreements do not cover the plaintiffs.

At this pass, I cannot find as a matter of law that the Pension Plan means what either the plaintiffs or the defendant say it means. The quoted phrase may mean that the company's right to terminate is conditioned *for all purposes and as to every Plan participant* on the terms of the labor agreements, or it may mean that the labor agreements are to be read into the Plan only to the extent of their own terms, in which case the notice requirement would appear to cover only union members.

I find that this is a question going to the facts and circumstances surrounding the formation of the Plan and is therefore a disputed question of fact best reserved for the trier of fact. On this basis, I hereby DENY both the plaintiffs' and the defendant's motions for partial summary judgment on Count XI.

### Count XII

■ Count XII alleges that Ward Foods breached Article V.A. of the Plan—which requires the company to make "such contributions to the Trust Fund which are necessary to maintain the Plan in full force and effect under the terms of the Internal Revenue Code"—by failing to fund the Plan for the eight months of 1974 preceding termination. Decision under this count requires construing the contract in light of the provisions of the I.R.C. dealing with pension plans.

The applicable provisions of the I.R.C. are those that define a "qualified plan" for purposes of obtaining a tax deduction for contributions to, and a tax deferral for benefits from, pension plans, 26 U.S.C. § 401 *et seq. See also* 26 C.F.R. § 1.401 *et seq.* Plaintiffs argue that these provisions required Ward Foods to make contributions to the Plan for the eight months of 1974 preceding termination on August 31. The defendant, on the other hand, has argued that these provisions do not require contributions to be made, but simply prescribe the conditions that must be met in order for any contributions that are made to be deductible.

I must agree with the defendant. The Court has been directed to no language in the I.R.C. or the regulations that specifies when or how much an employer must contribute to a plan. For example, 26 C.F.R. § 1.401–1(a)(3) outlines the tests that must

be met "[i]n order for a trust forming part of a pension . . . plan to constitute a qualified trust under section 401(a) [of the I.R. C.]." None of these tests require the employer to make any contributions at any particular time.

Plaintiffs rely on §§ 1.401–1(b)(1)(i) & (c) in support of their position. Section 1.401–1(b)(1)(i) merely states the general definition of a covered pension plan, i.e., "a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years." Plaintiffs assert in essence that the word "systematically" defines the word "maintained," and that therefore the employer must make "systematic" payments into the fund. However, it is clear both from the context and from the syntax that it is the provision of "definitely determinable benefits to his employees" that must be systematic, rather than the employer's contributions.

Section 1.401–1(c) requires that a "qualified status must be maintained throughout the entire taxable year of the trust in order for the trust to obtain any exemption for such year." Plaintiffs argue from this that the Plan's qualified status for 1974 was compromised by Ward Foods' failure to make any contribution for that year, in violation of the regulation. I cannot agree. Since, as I have already found, the regulations do not make a plan's qualified status dependent upon the employer's contribution to the fund, then the failure to contribute for 1974 can neither have jeopardized the tax exempt status of the Plan nor have prevented the Plan from being "in full force and effect under the terms of the Internal Revenue Code."

Therefore, as a matter of law, I find that Ward Foods did not breach the provisions of Article V.A. by failing to contribute to the Plan for 1974 for the reasons stated by plaintiffs in their motion and brief. However, a further question presents itself that prevents me from granting fully the defendant's cross motion for summary judgment. It appears that one of the tests for a qualified plan is that: "It must be impossible under the trust instrument at any time before the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be used for, or diverted to, purposes other than for the exclusive benefit of the employees or their beneficiaries." 26 C.F.R. § 1.401–1(a)(3)(iv). This provision is echoed by the second paragraph of Article V.A. of the Plan. The parties are invited, if they choose, to file memoranda addressing the question whether Ward Foods' failure to make contributions for 1974 constituted a diversion of the corpus or income of the Trust Fund in violation of the above-cited provisions.

In the meantime, I GRANT partial summary judgment for the defendant and against the plaintiffs only to extent indicated by the preceding discussion.

### Securities Claims

■ Plaintiffs have also alleged violations by defendants of various federal and state securities registration and anti-fraud statutes. Defendant Ward Foods has moved to dismiss these counts because the employees' interest in the HonIron Pension Plan was not a "security" falling within the ambit of either state or federal securities laws. Defendant Wyatt has joined in Ward Foods' motion.

As to both the federal and state causes of action, I find that the Plan was not a covered security and, therefore, grant the defendants' Motion to Dismiss the securities counts. Because the federal and state claims raise somewhat different considerations, I will deal with them separately.

### A. The Federal Securities Claims.

Counts XIII through XVIII claim violations by Ward and Wyatt of the anti-fraud and registration provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 ("Securities Acts").[2]

---

2. Count XIII alleges violations by Ward Foods of section 10b of the 1934 Act, 15 U.S.C.

§ 78j(b); Count XV alleges violations by Ward

Defendants, relying on the Supreme Court's decision in *International Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), assert that the Plan here was not a "security" as defined by the Securities Acts, 15 U.S.C. § 77b(1), and therefore was not subject to their requirements. I agree.

*Daniel* held that "the Securities Acts do not apply to a noncontributory,[3] compulsory[4] pension plan." *Id.* 570, 99 S.Ct. at 802. The Court relied on a number of grounds.

First, under the so-called *Howey* test, *see SEC v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946); *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Court held that noncontributory, compulsory pension plans do not involve "an investment of money in a common enterprise with profits to come solely from the efforts of others," and therefore do not "comport with the commonly held understanding of an investment contract." 439 U.S. at 559, 99 S.Ct. at 796.

Second, the Court found that neither the Securities Acts nor their legislative histories evinced an intent to cover pension plans, although pension plans had existed since the statutes' enactment. 439 U.S. at 563–65, 99 S.Ct. at 798–99.

Third, the enactment of ERISA, 29 U.S.C. § 1001 *et seq.*, which "deals expressly and in detail with pension plans," 439 U.S. at 569, 99 S.Ct. at 801, further convinced the Court that the Securities Acts did not extend to noncontributory, compulsory pension plans. *Id.* 569–70, 99 S.Ct. at 801–02.

The parties have agreed that for the purposes of the instant motions the HonIron Pension Plan may be deemed a contributory, noncompulsory, defined benefit[5] pension plan. The question, then, is whether the holding in *Daniel*, limited to noncontributory, compulsory plans, applies as well to contributory, noncompulsory plans.

I find that the second and third grounds relied on by the Supreme Court in *Daniel*, relating to the legislative intent of the Securities Acts and to the enactment of ERISA, are equally applicable to the HonIron Plan. Congress appears not to have included pension plans in the coverage of the Securities Acts though it might, by plain language, have included them. Moreover, by providing for the close regulation of pension plans through ERISA, Congress acknowledged that "it was filling a regulatory void" in the Securities Acts. *Id.* 570, 99 S.Ct. at 802. *See also Marine Bank v. Weaver*, —— U.S. ——, —— n.7, 102 S.Ct. 1220, 1224 n.7, 71 L.Ed.2d 409 (1982) ("Since ERISA regulates the substantive terms of pension plans, and also requires certain disclosures, it was unnecessary to subject pension plans to the requirement of the federal securities laws as well.") (dictum).

Applying the *Howey* test to the HonIron Plan is somewhat more problematic. Unlike the employees in *Daniel*, the participating HonIron employees voluntarily contributed a percentage of their wages to the Plan. Thus, the "investment of money" element of the *Howey* test appears to be met. The *Daniel* Court noted, however, that "the 'touchstone' of the *Howey* test 'is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entre-

---

Foods of 15 U.S.C. §§ 77e, 77*l*(2); and Count XVII alleges violations by Ward Foods of 15 U.S.C. § 77q(a). Counts XIV, XVI, and XVIII, respectively, allege that Wyatt aided and abetted Ward Foods in its substantive violations.

**3.** A noncontributory plan is one to which the employer contributes all funding on behalf of the participating employees. Conversely, a contributory plan is one to which the employees themselves contribute a portion of their wages, often a fixed monthly percentage.

**4.** A compulsory plan is one in which participation by the employees is mandatory. A noncompulsory plan, on the other hand, is one in which participation is voluntary.

**5.** A defined benefit plan "pays fixed or determinable benefits. The benefits ordinarily are described in a formula which specifies the amount payable in monthly or annual installments to participants who retire at a certain age." SEC Release No. 33–6188, at 19,593.

preneurial or managerial efforts of others.' " *Id.* 439 U.S. at 561, 99 S.Ct. at 797. (quoting *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975)); *accord Black v. Payne,* 591 F.2d 83 (9th Cir. 1979).

As in *Daniel,* the plaintiffs here argue that, as Plan participants, they had a reasonable expectation of profits derived from the successful investment of Fund assets. Although the argument may ring true in an abstract sense, it ignores the economic realities of the situation. At least in the case of a defined benefit plan,[6] such as the HonIron Plan, any profits realized on the investment of Fund assets becomes an indivisible part of the Fund. These profits are not attributed to each participant's "investment" in such a way that an employee's contributions can be said to yield any individual return.[7]

In addition, "the profit element of the *Howey* test is not satisfied when the benefits due a participant upon retirement are not primarily dependent on the success or failure of the trustees' investment efforts to generate asset earnings." *Tanuggi v. Grolier Inc.,* 471 F.Supp. 1209, 1214 (S.D.N. Y.1979); *see also Daniel,* 439 U.S. at 562, 99 S.Ct. at 798. Referring to the HonIron Plan itself, Article V provided that "[t]he Company [HonIron] will pay the cost of providing the benefits under the Plan by making such contributions to the Trust Fund which, when added to amounts contributed by Participants, are necessary to maintain the Plan in full force and effect under the terms of the Internal Revenue Code." Thus, as in *Daniel,* the Plan counted on employer contributions to make up for any shortfalls in earnings necessary to provide benefits for those eligible to receive them. Under those conditions, any interest a participant might have in profits generated by the Fund are even more tenuous. *See Newkirk v. General Electric Co. ("Newkirk I "),* [1979–80] Fed.Sec.L.Rep. (CCH)

¶ 97,216 (N.D.Cal.1979); *Tanuggi,* 471 F.Supp. at 1214.

The true nature of the Plan is further illumined by the fact that the amount of pension benefits that participants receive is a function of the level of his compensation and length of service. Nothing in the Plan links the success of the Fund's investments to the level of benefits. If anything, the Fund's profits serve merely to reduce the amount that the employer must contribute to maintain the financial health of the Plan. Thus, any stake that the participants have in the investment success of the Fund is remote at best.

Finally, I agree with the court in *Tanuggi,* which excluded a shared contribution, noncompulsory plan from the Securities Acts, that

"[the participating employees'] interest in the Plan is more like an interest in a deferred, fixed annuity than an investment contract.... Here, the plan's appeal to the participant is its insurance-like 'stability and security' and not the prospect of growth.... The Plan simply receives the employee contributions from the employer and applies them towards a group annuity."

471 F.Supp. at 1215. (cites omitted). Moreover, "[t]he risk of loss arising from the failure of the employer to contribute and inadequate investments is a different type of risk than that commonly associated with a security." *Id.*

■ The SEC has expressed the opinion that contributory, noncompulsory pension plans are covered by the Securities Laws. SEC Release No. 33–6188, at 19,596–98. While an administrative agency's determinations regarding matters within its special competence are to be accorded great weight, "this deference is constrained by [the Court's] obligation to honor the clear meaning of a statute, as revealed by its

---

**6.** I do not reach the question whether a defined *contribution* plan, under which benefits may vary according to the amount of contributions and profitability, would require a different result.

**7.** Participants who withdraw from the Plan are entitled to recover their accumulated contributions plus interest. Such a peripheral contingency does not, however, suffice to make a security of an interest otherwise not one.

language, purpose, and history." *Daniel,* 439 U.S. at 566 n.20, 99 S.Ct. at 800 n.20. Thus, in light of the foregoing analysis, I am convinced that despite the SEC's pronouncement to the contrary HonIron's contributory, noncompulsory pension plan was not a security within the meaning of the Securities Acts. I am fortified in my opinion by the holdings in *Tanuggi* and *Newkirk I,* in both of which contributory, noncompulsory plans were excluded from Securities Act coverage.

Having decided that the HonIron Pension Plan was not a security, I therefore DISMISS Counts XIII through XVIII from the Second Amended Verified Complaint.

### B. The State Securities Claims.

Plaintiffs also allege violations of certain state securities laws, Hawaii Rev.Stat. § 485–25 (Securities Fraud) (Count XX) and Hawaii Rev.Stat. § 485–8 (Failure to Register) (Count XXI). As with the federal claims, the HonIron Plan must have been a security within the meaning of these state laws in order for a violation to have occurred.

Plaintiffs rightly point out that the question is governed by the Hawaii Supreme Court decision in *State v. Hawaii Market Center, Inc.,* 52 Haw. 642, 485 P.2d 105 (1971). In that case, the court held that, for purposes of the state securities laws, it would not apply the *Howey* test but rather a "risk capital" test under which "[t]he salient feature of securities sales is the public solicitation of venture capital to be used in a business enterprise." *Id.* 648, 485 P.2d 105.

The facts of *Hawaii Market Center* were entirely different than those before me now and, therefore, offer little help in applying the state standard to the present case. Nor, apparently, do any other Hawaii cases apply the risk capital test to pension plans.

Looking, then, to the reasoning of the *Hawaii Market Center* case for guidance, I note the Hawaii court's statement that the "subjection of the investor's money to the risks of an enterprise over which he exercises no managerial control is the basic economic reality of a security transaction." *Id.* The plaintiffs have argued forcefully that their contributions to the HonIron Plan qualified under this rubric because they were subject to the risk that the Plan would fail for a variety of reasons, such as the failure of the employer·to properly contribute.

That argument, however, would result in a definition of security that is overly broad. It is not sufficient that the plaintiffs' interest in the Plan be subject to risks, for indeed many non-security interests may be, and often are, subject to a risk of loss. Rather, there must be the risk of loss associated with an investment of "venture capital to be used in a business enterprise." In this light, it is important to distinguish between the employee's interest in the Plan and the Fund's interest in the investments it makes on behalf of the Plan. It is clear that neither the Plan nor HonIron solicited funds from the participants for the purpose of raising venture capital, although the Fund may itself have invested money in securities.

Judge Ingram's holding in *Newkirk II, Newkirk v. General Electric Co.,* No. C–79–3318–WAI (N.D.Cal. March 26, 1980), is to the same effect. There, plaintiffs argued that a shared contribution, noncompulsory pension plan was a security under California's securities laws. California, too, applies the risk capital test, but Judge Ingram held that "plaintiffs' interest in the GE plans have none of the indicia of a security. Specifically, the plans are not a method by which GE raises risk capital. The Court affirms its earlier characterization of the savings plan as a vehicle 'by which an employee may boost his savings by virtue of his employer's contributions.'" *Id.,* slip op. at 3. I find this reasoning persuasive in the instant case.

Furthermore, in the absence of a clear Hawaii decision or legislative mandate choosing to encompass pension plans within the state's securities laws, I am loath to extend state coverage to an area so thoroughly regulated by federal law. With the

advent of ERISA, it would be an extraordinary step to subject pension plans to the largely redundant requirements of the state (and federal) securities laws absent specific instructions to the contrary.

Therefore, I find that the HonIron Plan was not a security covered by the state securities laws and accordingly DISMISS Counts XX and XXI from the Second Amended Verified Complaint.

### Unfair Trade Practices

 Count XIX of the Complaint alleged violations of Hawaii Rev.Stat. § 480–2, which makes illegal "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

In order for the plaintiffs' claim to survive the motion for summary judgment, there must be allegations sufficient to show either that the defendants are "merchants" or that the suit would be in the public interest. *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 614, 607 P.2d 1304 (1980); Hawaii Rev.Stat. § 480–13 (providing a private right of action for violations of § 480–2). It is undisputed that the defendants are not "merchants" within the statute's meaning. My holding herein dismissing plaintiffs' securities counts forecloses the possibility that any violations of the federal and/or state securities laws satisfy the public interest requirement. Nevertheless, I have previously held in this case that the plaintiffs might be able to make out a public interest under a broader test. *Cunha v. Ward Foods, Inc., et al.*, 501 F.Supp. 830, 836 (D.Hawaii 1980).

No new facts on this point having been presented, I adhere to my earlier holding. Defendants' Motion as to Count XIX is therefore DENIED.

Accordingly, based on the preceding, IT IS HEREBY ORDERED that:

1. As to Count X, the defendant's Motion for Partial Summary Judgment is GRANTED, and the plaintiffs' motion is DENIED;

2. As to Count XXIV, the defendant's Motion for Partial Summary Judgment is DENIED;

3. As to Count XI, both the plaintiffs' and the defendant's Motions for Partial Summary Judgment are DENIED;

4. As to Count XII, defendant's Motion for Partial Summary Judgment is GRANTED in part, and the plaintiffs' motion is DENIED in part;

5. As to Counts XIII through XVIII, the defendants' Motion to Dismiss is GRANTED;

6. As to Counts XX and XXI, the defendants' Motion to Dismiss is GRANTED; and

7. As to Count XIX, the defendants' Motion to Dismiss is DENIED.