Michael F. McCARTHY and American Resources, Ltd., Plaintiffs,

v.

PACIFIC LOAN, INC., and Thrift Guaranty Corporation, Defendants.

PACIFIC LOAN, INC., and Thrift Guaranty Corporation of Hawaii, Defendants-Counterclaim Plaintiffs,

v.

Michael F. McCARTHY, American Resources, Ltd., Curtis J. Bernhardt, Carl J. Bernhardt, Robert L. Hofmann, Harold T. Okahara, Andrew F. Pollett, James M. Seegraves, Laura L.M. Wong, Daniel R. Matsukage, Nathan H. Suzuki, American Sunrise, Ltd., Castle Management Corp., dba Orion Enterprises, Christie Oil Co., Ltd., CJB Holdings, Development, Inc., Eagle River Development Co., Inc., Hawaii-Alaska Development Corp., Hawaii-Alaska Land & Cattle Co., the Norfolk Group, Ltd., Norfolk Investment Co., Ltd., Norfolk Realty, Inc., Norfolk Utilities and Development, Inc., O.R., Ltd., Oriental Rugs, Inc., PML Ltd., Pupukea Tree Farms, San Pedro Packers, Inc., Stone Oil Corporation, Transpacific Construction Consultants, Inc., Velzeyland Properties, John Does 1–50, Jane Does 1–50, Doe Partnerships 1–50, Doe Corporations 1–50, Doe Entities and Associations 1–50, and Doe Governmental Units 1–50, Counterclaim Defendants.

Civ. No. 82–0292.

United States District Court, D. Hawaii.

March 6, 1986.

Richard J. Archer, Honolulu, Hawaii, for Pacific Loan, Inc.

Paul Mullin Ganley, Honolulu, Hawaii, for Thrift Guar. Corp.

Robert F. Miller and Linda Mei Jaress, Honolulu, Hawaii, for Thrift Guar. Corp. of Hawaii.

Dennis E.W. O'Connor, Jerrold K. Guben, Charles E. McKay, Honolulu, Hawaii, for Michael F. McCarthy.

Jay M. Fidell, Bendet, Fidell & Sakai, Honolulu, Hawaii, for Theo. H. Davies & Co., Ltd.

Boyce R. Brown, Terry Day, Honolulu, Hawaii, for Carl J. Bernhardt, Curtis J. Bernhardt, and Norfolk Inv. Co.

Nathan Suzuki, pro se.

Rogers M. Ikenaga, Honolulu, Hawaii, for Daniel R. Matsukage.

## DECISION ON PACIFIC LOAN, INC.'S (COUNTERCLAIM PLAINTIFF'S) MOTION TO REINSTATE COUNT I (RICO) OF COUNTERCLAIM

PENCE, Senior District Judge.

On July 20, 1982, Pacific Loan, Inc. (Pacific) filed its counterclaim against Michael F. McCarthy, et al. (McCarthy) alleging, in Count I thereof, violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (RICO); Count II, fraud in the sale of securities, in violation of 15 U.S.C. § 78j and Rule 10b–5 promulgated thereunder, and Haw.Rev.Stat. § 485–25; and Count III, fraud and fraudulent conveyances and constructive trusts.

Thereafter followed the usual procession of Answer and Motions. A More Definite Statement was filed by Pacific on October 27, 1982 setting forth, in more particularity, the acts averred in the counterclaim, and that those acts all occurred within five years of that date and had continued from 1977 until July 22, 1981. By this court's Order of November 19, 1984, the validity of the averments of the securities act violations (Count II) was upheld.

By Decision and Order entered December 31, 1984, 600 F.Supp. 137, this court dismissed Count I of the counterclaim, the RICO Count. This dismissal was based upon *Sedima, S.P.R.L., v. Imrex Company, Inc., et al.*, 741 F.2d 482 (2d Circuit 1984) requiring a civil RICO plaintiff to establish that a civil RICO defendant had already been convicted of certain crimes.

The Second Circuit (and, ergo, this court) was reversed in *Sedima, S.P.R.L., v. Imrex Company, Inc., et al.*, — U.S. —, 105 S.Ct. 3275, 84 L.Ed.2d 346, decided July 1, 1985. There, in brief substance, the Court held that (1) there is no requirement that a private action can proceed only against a defendant who has already been convicted of a predicate act or of a RICO violation, and (2) there is also no requirement that a plaintiff in a private action establish a "racketeering injury" as opposed to an injury resulting from the predicate acts themselves.

On March 23, 1984, in Criminal # 60148, *State of Hawaii v. Michael F. McCarthy, et al.*, McCarthy and other defendants were indicted for what, in substance, were the same fraudulent acts charged in the federal indictment. On January 3, 1985, Judge Yim of the First Circuit Court, State of Hawaii, granted McCarthy's and Okahara's Motion to Dismiss.

On January 3, 1985, counterclaim defendants McCarthy, Matsukage, Okahara, and the two Bernhardts were indicted under RICO. On March 7, 1985, in a Superseding Indictment, Matsukage pleaded guilty to

Counts 1 (Conspiracy), 60 (Mail Fraud), and 73 (Wire Fraud).

On June 25, 1985, the case of Carl Bernhardt was severed, and on July 25, 1985, the case of Curtis Bernhardt was likewise severed from the McCarthy/Okahara trial. Trial for both Bernhardts has been scheduled for May 20, 1986.

On July 2, 1985, following defendants' Motion to Dismiss the indictment, Magistrate Gedan reported and recommended that Counts 2 to 30 of the superseding indictment (Criminal # 85–00132) should be dismissed. Those counts set forth 25 identifiable mailings by home owners of mortgage payment checks. The magistrate's report and recommendation was affirmed by District Judge Craig on July 29, 1985. The government appealed that ruling. (The appeal has not yet been decided.)

The criminal trial of McCarthy and Okahara started on July 31, 1985. On September 26, 1985, the government rested, and defendants McCarthy and Okahara moved for a judgment of acquittal. On September 30, 1985, Judge Craig acquitted McCarthy and Okahara of all charges in Count 1 (Conspiracy) and Counts 31 thru 74 (Mail Fraud and Wire Fraud), as well as all charges of aiding and abetting the commission of conspiracy, mail fraud, or wire fraud. The government filed Notice of Appeal. (This appeal has not yet been heard.)

On November 15, 1985, Pacific moved that Count I, the RICO Count, should be reinstated as to all counterclaim defendants except American Resources, Ltd., Development, Inc., and Eagle River Development Co., Inc.

On December 17, 1985, McCarthy filed an Affidavit in Opposition to the motion claiming that because Judge Yim, Magistrate Gedan, and Judge Craig had dismissed all of the charges against them, ergo, neither he nor Okahara engaged in "conduct that is chargeable or indictable"; that the indictments returned against him and Okahara "were improper and without factual basis".

This was followed by a December 20, 1985 letter to this court from Pacific's attorney, Archer, anticipating argument from McCarthy that the securities acts violations were not indictable because barred by the statute of limitations, maintaining that under *United States v. Jensen*, 608 F.2d 1349, 1355–56 (10th Cir.1979), the securities act violations set forth in pp. 17 and 18(a), 40(a), 40(b), 43, 44, and 45 were indictable even in 1985.

On December 30, 1985, McCarthy filed a Supplemental Memorandum in Opposition to Pacific's Motion to Reinstate Count I of the Counterclaim. McCarthy argued that the judgment of acquittal on all charges of conspiracy, mail fraud, and wire fraud in Federal Criminal # 85–00132, and the dismissal of state charges in # 60148, supra, this "disposed of the issue of conspiracy, mail fraud, and wire fraud as predicate acts." McCarthy maintained that neither he nor Okahara can now "be indicted for these alleged offenses and, therefore, all conspiracy, mail fraud, and wire fraud cannot be a basis" for the RICO allegations against these two. McCarthy again argued that the five-year statute of limitations set out in 18 U.S.C. § 3282 is applicable to securities fraud prosecution.

## THE CIVIL STATUTE OF LIMITATIONS PROBLEM.

McCarthy also maintains that H.R.S. 657–11 bars a civil RICO action "at this late date". McCarthy correctly points out that RICO does not contain a limitations period, and the most closely analogous state statute of limitations therefore applies, citing *Compton v. Ide*, 732 F.2d 1429 (9th Cir.1984).

H.R.S. 657–11 reads:

Whenever any federal statute provides for imposition of a civil penalty or liquidated damages or imposes a new liability or enlarges any existing liability and the statute does not specify the period within which the suit to recover ... may be brought, the suit, if brought in the state court, shall be commenced within one year from the date the cause of action arises or be thereafter barred.

McCarthy argues that since Pacific alleged "indictable acts which occurred on June 22, 1981" or before, the one-year statute of limitations ran out on June 22, 1982. Since the counterclaim was filed on July 19, 1982, therefore, all RICO allegations are time-barred. Moreover, argues McCarthy, Pacific had full access to all records and was fully aware of the underlying facts involving the charges certainly by the time they filed their complaint in Civil # 675851, *Pacific Loan, et al., v. Bernhardt, et al.,* in the First Circuit Court of the State of Hawaii in October 1981. McCarthy further maintains that the last overt act alleged appeared in Pacific's Counterclaim paragraph 40 as of "December 31, 1979", and the last overt act in the More Definite Statement occurred on June 22, 1981, ergo, maintains McCarthy, under 657-11 all RICO charges are barred as a matter of law.

In its reply memorandum of January 10, 1986, Pacific maintained:

1. That paragraph 17 of the More Definite Statement of October 27, 1982, averred that McCarthy's acts continued to and including June 22, 1981, and paragraph 18 tied those averments into the securities act fraud violations. Thus, all violations, even going back to 1978, were within five years of the filing of the More Definite Statement.

2. Paragraph 40(d) averred violations beginning May 1971 [pp. 17 and 18] and continued to and including June 22, 1981. This court ruled on March 11, 1983 [docket entry 158] that the averments were made with sufficient particularity. The sufficiency of paragraph 31 averments of violations by McCarthy in 1979, 1980, and 1981, as incorporated in paragraph 40, was sustained by this court on November 19, 1984 [docket entry 598].

3. That the RICO claim, if reinstated, will relate back to the date of the original pleading, viz., July 20, 1982. Pacific also maintains that acquittal

on criminal charges does not bar a civil RICO action.

4. The federal mail and wire fraud charges are still pending because criminal Counts 1 thru 30, though dismissed by Magistrate Gedan, have been appealed by the government.

5. The RICO claim was not barred on June 22, 1982, under H.R.S. 657-11.

Pacific is entirely correct in maintaining that if its RICO claims "are reinstated, the effect of the statute of limitations is to be determined by the date the complaint was originally filed, unless the result would be to inject a new claim." *DePinto v. Provident Security Life Insurance Company,* 323 F.2d 826, 832 (9th Cir.1963).

As set forth above, Pacific's RICO claims are precisely those which were in the original counterclaim filed July 20, 1982, and in its More Definite Statement of October 27, 1982.

■ Pacific also correctly maintains that Rule 8 of F.R.Civ.P. states:

(c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations."

On its face, therefore, since McCarthy did not raise the issue of statute of limitations until after the present Motion to Reinstate Count I was filed, McCarthy should be barred from raising it at this time.

This case has been pending since 1982. McCarthy had 2½ years before this court's dismissal of the RICO Count in which to have raised the issue. He has set forth nothing in any of his moving papers to explain why it has not been heretofore raised. This court, in the exercise of its discretion, would hold that the defense of the statutory bar has been waived.

■ Only because of this court's observation of the appellate court's treatment of matters involving judicial discretion does this court further consider the problem. RICO has no limitation period set forth in the statute. On a complaint founded on a federal statute that does not contain a limitations period to apply, the federal court

must characterize the cause of action and look to an analogous state statute for a limitations period. McCarthy argues that H.R.S. 657-11, establishing a one-year period for federal causes of action, is applicable to this case.

Section 657-11 has had diverse treatment by the judges in the District of Hawaii. In *Cunha v. Ward Foods, Inc.*, 501 F.Supp. 830-37 (D.Ha.1980), Judge King refused to apply it to a complaint urging Rule 10(b)(5) and section 17(a) securities claim under the Securities Exchange Act of 1934, 15 U.S.C. 78j, and the Securities Act of 1933, 15 U.S.C. 77q(a) on the basis that "(1) the federal statute involved did not impose new liability because there were similar Blue Skies laws, and (2) this action was not in the state court." In *Bill's Crane Service, Inc. v. Quisenberry*, 545 F.Supp. 359-62 (D.Ha.1982), Judge King applied section 657-11 to a 42 U.S.C. 1983 alleged violation on the basis that a section 1983 action was "most accurately characterized as an action created by statute", and "the section imposes a 'new' liability", one which did not exist at common law.

In *Matthewman v. Akahane*, 574 F.Supp. 1510 (D.Ha.1983), Judge Fong refused to follow *Bill's Crane Service, Inc.* and, instead, held that H.R.S. 657-1(4), which provides a six-year statute of limitations for personal actions of any nature whatsoever not specifically covered by the laws of the state, had a more analogous application to an action under 42 U.S.C. 1983. In *Lai v. City and County of Honolulu*, 575 F.Supp. 1510 (D.Ha.1983), Judge King again held that section 657-11 applied to an action under 42 U.S.C. 1983, refusing to follow Judge Fong's holding in *Matthewman*. Judge King was reversed in *Lai v. City and County of Honolulu*, 749 F.2d 588-90 (9th Cir.1984), where the court of appeals applied the six-year statute of limitation. The appellate court's basic thesis apparently was that the enactment of 42 U.S.C. 1983 in 1871 preceded the enactment of section 657-11 (enacted in 1945), and because it did not impose any new liability or enlarge any existing liability, the court concluded that the new or enlarged liability

language could apply only to federal statutes enacted after the adoption of section 657-11. [p. 590]

This judge, too, had an occasion to examine the application of section 657-11 to RICO claims in its September 25, 1985 Decision on Defendants' Motions for Summary Judgment in *Bush v. Rewald*, 619 F.Supp. 585 (D.Ha.1985). There, defendants had urged that the plaintiff's RICO claim was time-barred. The plaintiffs appeared to concede the constitutionality of section 657-11 by relying on *Eisenberg v. Gagnon*, 564 F.Supp. 1347 (E.D.Pa.1983), arguing that the federal court should apply the longest feasible period available under Hawaii law, viz., the six-year common law fraud limitation. This judge considered *Compton v. Ide, supra,* and held that the most closely analogous Hawaii statute was section 657-11, and by its terms, applied to the RICO statute.

Although Judge Fong, in *Matthewman, supra* (pp. 1515-21), found 657-11 to be an unconstitutional discrimination against federal causes of action, this issue was apparently not raised or considered by the Ninth Circuit in *I.A.M. v. Aloha Airlines*, 781 F.2d 1400 (1986). (This was an appeal from Judge Fong.) The appellate court held that the gravamen of *I.A.M.*'s complaint centered around an obligation founded upon the status quo provisions of the Railway Labor Act, sections 155 and 156, rather than upon the collective bargaining agreement itself. "Therefore, the most closely analogous state limitations statute is the one-year period contained in H.R.S. section 657-11 governing recovery authorized by federal statute." These sections were amended June 21, 1934.

If the reasoning of *Lai* was correct, then since the enactment of sections 155 and 156 of the Railway Labor Act preceded the enactment of section 657-11, it would appear that *I.A.M.* is in conflict with *Lai* as to when, if at all, section 657-11 can be applied. It is apparent that the *Lai* panel was concerned with "the strong federal interests in a limitations period 'sufficiently

generous ... to preserve the remedial spirit of federal civil rights actions'." "Accordingly, [the panel concluded] that the applicable limitations statute for section 1983 actions arising in Hawaii is H.R.S. 657–1(4)" (six years). [*Lai, supra,* p. 590.]

In the *I.A.M.* case, the panel found a different objective. There, the panel followed the rationale of *Delcostello v. International Brotherhood of Teamsters,* 462 U.S. 151–71, 103 S.Ct. 2281–94, 76 L.Ed.2d 476 (1983). "State legislatures do not devise their limitations periods with national interests in mind and ... the lengthy state limitations periods analogous to duty of fair representation claims [3 to 6 years] would frustrate 'the relatively rapid final resolution of labor disputes favored by federal law'." [*I.A.M., supra,* at p. 1406.] Since *Delcostello* concluded that a more analogous period was the six-month limitations period specified in section 10(b), Railway Labor Act 29 U.S.C. 160(b), 1982, the *I.A.M.* panel adopted the *Delcostello* rationale for actions brought under the Railway Labor Act and held that the timeliness for suit for breach of a collective bargaining agreement was to be determined by reference to the appropriate state statute of limitations, and in order to implement the federal policy that relatively rapid final resolution of labor disputes is to be favored, chose Hawaii's shorter limitation period of one year under section 657–11 over the six-year period set forth in 657–1(4).

Were it not for the use and application of section 657–11 by the Ninth Circuit in *I.A.M.,* this court would now agree with Judge Fong, as set forth in *Matthewman,* and hold the one-year statute unconstitutional as discriminatory against federal statute.

"When 42 U.S.C. § 1983, which is designed to be an 'expansive', 'sweeping', 'overflowing', 'comprehensive' and remedial legislation for the redress of federal constitutional deprivations ... is given a shorter limitation period than any other state cause of action, there can be no doubt the offending statute of limitations

unconstitutionally discriminates against federal causes of action, and must be disregarded in determining the applicable statute of limitations." [p. 1521.]

This circuit, however, by its use thereof in *I.A.M.,* impliedly put the stamp of constitutionality upon the section.

The Court, in *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), in attempting to settle the problem of the statute of limitations as applied to section 1983 claims, in a case arising out of New Mexico, has set forth its rationale for the application of state statute of limitations to actions arising out of federal statutes. The Court operated on the principle that it should adopt the state statute of limitations that "best fits the statute's remedial purposes". [*Id.* 105 S.Ct. at 1939.] In determining the most analogous state statute, the Court held that one of the steps in that determination was to "characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." [*Id.* at 1943.]

The Court, in *Sedima S.P.R.L. v. Imrex Company, Inc.,* set forth the underlying remedial purpose of the RICO statute. As the Court stated in *Sedima, supra* [105 S.Ct. p. 3286], "RICO is to be read broadly." Congress has made an "express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes' ... The statute's 'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity ... Congress wanted to reach both 'legitimate' and 'illegitimate' enterprises."

■ Absent the possible unconstitutionality of section 657–11, this court, in following the rationale of the circuit in both *Lai* and *I.A.M.,* would hold that the six-year statute of limitations under section 657–1(4) is more analogous to the objectives Congress hoped would be obtained by the RICO statute than section 657–11.

### EFFECT OF ACQUITTAL OF DEFENDANTS.

McCarthy and Okahara urge that because they were acquitted in both the state and federal courts of Conspiracy, Mail and Wire Fraud, the requisite "predicate acts" necessary to support a RICO civil action no longer exist. They argue that the judgment of acquittal eliminates any possibility of indictment for those acts, and that, therefore, the first requisites for a civil RICO claim no longer exists. Defendants' argument basically presents the flip side of the Second Circuit's conclusion in *Sedima* that there must be prior conviction before civil claims under RICO can be made. Defendants' theory is, "If we are acquitted, we are home free" from civil RICO claims.

Prior to the Court's pronouncements in *Sedima, supra,* there might have been some merit in this argument. In its analysis of section 1964, the Court stated, "[T]he term 'violation' does not imply a criminal conviction ... [i]t refers only to a failure to adhere to legal requirements. This is its indisputable meaning elsewhere in the statute. Section 1962 renders certain conduct 'unlawful'; § 1963 and § 1964 impose consequences, criminal and civil, for 'violations' of § 1962." [*Sedima*, p. 3281.]

The Court pointed out that "The word 'conviction' does not appear in any relevant portion of the statute; to the contrary, the predicate acts involve conduct that is 'chargeable' or 'indictable', and 'offense[s]' that are 'punishable' under various criminal statutes ... a racketeering activity ... must be an act in itself *subject to* criminal sanctions" [emphasis added in original]. [*Id.*] The Court noted: "The only specific reference in the legislative history to prior convictions of which we are aware is an objection that the treble damages provision is too broad precisely because 'there need *not* be a conviction under any of these laws for it to be racketeering.' 116 Cong.Rec. 35342 (1970) (emphasis added in original)." [*Id.* at 3282.]

The Court continued: "We are not at all convinced that the predicate acts must be established beyond a reasonable doubt in a proceeding under § 1964(c). In a number of settings, conduct that can be punished as criminal only upon proof beyond a reasonable doubt will support civil sanctions under a preponderance standard." [*Id.*] "That the offending conduct is described by reference to criminal statutes does not mean that its occurrence must be established by criminal standards or that the consequences of a finding of liability in a private civil action are identical to the consequences of a criminal conviction." [*Id.* at 3283.] "A guilty party may escape conviction for any number of reasons...." [*Id.* at 3284.]

■ Clearly, therefore, the plaintiffs in civil actions are not faced with the burden of proof imposed upon the government in criminal actions. The fact that the government may not have been able to prove beyond a reasonable doubt that the defendants here committed certain predicate acts does not foreclose the civil plaintiffs from proving those same predicate acts by evidence of a lesser weight than "beyond a reasonable doubt".

The Court held: "A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." [*Id.* at 3285.] A plaintiff has standing and can recover if he has been injured in his business or property by the conduct constituting the violation. As noted heretofore, RICO is to be read broadly and liberally construed to effectuate its remedial purposes. As the Court stated, "The 'extraordinary' uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud." [*Id.* at 3287.]

If additional weight were needed for its decision, this court notes that the dismissal of Counts 2 thru 30 by the magistrate, and the judgment of acquittal by Judge Craig, have each been appealed by the government, and those appeals are still pending. Thus, there is as yet no absolute finality to either the dismissal or the acquittal.

This court, following *Sedima,* holds that Pacific may maintain this action if the defendants conducted the enterprise through a pattern of racketeering activity. The questions whether the defendants committed the requisite predicate acts, and whether the commission of those acts fell into a pattern are matters of proof. Count I has been properly pleaded and is not to be dismissed because some, or even all, of the defendants in this action have been acquitted of certain charged violations of Conspiracy, Mail, and Wire Fraud.

## THE CRIMINAL FIVE–YEAR STATUTE OF LIMITATIONS.

■ There is no merit in defendants' argument that because the five-year statute of limitations of 18 U.S.C. § 3282 applying to non-capital offenses prevents the indictment of McCarthy or Okahara now, in 1986, for any of the alleged violations set out in plaintiffs' complaint, therefore, none of the alleged violations described in the counterclaim and the More Definite Statement of the counterclaim can serve as "predicate acts" in plaintiffs' RICO charges. As stated above, when a claim is reinstated, all of the allegations go back to the date they were originally filed. That was on July 20, 1982. On that date, the five-year criminal statute of limitations had not expired.

The Counter-Claimants' Motion to Reinstate Count I is GRANTED. Counter-Claim attorneys will prepare the Order.