940 F.2d 564
 60 USLW 2075, Fed. Sec. L. Rep. P 96,097,
13 Employee Benefits Ca 2473
 William T. USELTON; W.D. Hupp; C.J. Dowling; Kenneth
Miles; G.D. Jeffcoat; Jack Wilson; K.D. Witt; Paula
Rosa; Johnny S. Hunt; James A. Mason; Robert E. Stuart;
Jerry Don Casey; Maurice Uhrmacher; Loyd A. Duncan;
Vernon Jordan; Hubert D. Williamson; J.W. Haris; D.L.
Haralson; Harvey Leo Hess; Wood G. Ishmael; Harold W.
Summers; Charles E. Stockton; Joe C. Gray; Earl G.
Jackson; E.L. Whilhock; Melvin Carpenter; Robert T.
Keener; Troy G. Carson; Jack L. Blankinship; Carl L.
Davidson; J.F. Maxwell; Paul M. Warren; Jay W. Harned;
E.H. Coulter; Earl E. White; Cleo C. McDaniel; Bobby F.
Stansbury; Bill J. Anderson; Daniel A. Denny; Carl Lee
Wilson; Leroy Barrett; James E. Lee; Donald L. Butler;
L.W. Gonzales; Daisy "Maurene" Davis; Keith W. Braul;
Jerry L. Edgemon; Gilbert L. Robles; Loyd E. Courtney;
Hollis M. Mauldin; Johnny L. Johnson; Carmel M. Doern;
Tom Thelkekd; T.L. Jones; Kenneth W. Hays; Jackie Jones;
William Donley; Howard L. Mitchell; Earl D. Denton;
Stanley R. Gomes; Jack P. Rowland; K.L. Billingsley; Earl
L. Woffard; D. Td. Frizell; H.W. Richardson; Donald
Kendrix; Betty Cox; James M. Woodward; Frank Donald R.
Winter; Jack Yarbrough; Finis M. Yocum; Tommy L.
Kirkland; John A. Moyshen; Harold Allison; Marion
McClelland; Leslie R. Walcher; Lloyd Fortune, Sr.; B.C.
Evans; Raymond B. Horn; Leeha McCormick; Pete Wolf; Leon
Hancock; William Anderson; Robert G. Porter; Eldon W.
Bishop; E.B. Copeland; D.K. Hanshue; E.G. Dedmon; Leslie
R. Walcher; Carl L. Holman; Kenneth W. Jackson; Joel
Robinson; Charles Pemberton; Bruce O. Smith; T.D. Jack;
James T. Johnson; Willie G. Loudermilk; Raymond Horn;
George C. Tsoodle; Gerold L. Goad; B.J. Burrell; D.Y.
Qualine; Frances M. McKye; Alonzo Anderson; Hoarce E.
Reeves; Betty Moore; Billy R. Jenkins; Jerry A. Warren;
C.J. Womack; Johnny Ballard; Kelley Ruminer; Deborah
Yandell; Robert Ferguson; Claudie C. Weaver; John O.
Stanley; William R. Bricker; Elen H. Spiva; Phillip
Horne; Earl V. Griffin; Anna M. Burkett; James E. Neal;
James McCampbell; Valorie Booker; J.W. Rackley; Ronnie J.
Steward; Clarence Burns; John L. Knapp; Ramon L. Wolfe;
W.A. Smith; Alan Prudhome; James E. Thompson; Henry S.
Baxter; Patsy R. Brock; Larry Joe Stafford; Daniel
Looney; Byron A. Bouchelle; Carl F. Davis; Jerry I.
Poindexter; Lee Roy Houston; Clinton H. Reynolds; Nib E.
Hill; David R. Hines; C.G. Olson; Cleophos Frost; Bobby
G. Decker; James Long; Lorita A. Goya; Wayne T. Wells;
Gerald A. Luton; Harold Shea; Johnnie T. Henson, Jr.;
Opal Lee Broussard; Homer Kimble; Jerry Nohnager; Judy A.
Rogers; Ilona Garrison; Edward A. King; Alyce L. King;
Evert L. Carroll; Ben H. Marshall; Shirley J. Lamb; John
William Edwards; Maurice Cannon; Leroy Phelps; J.D.
Burkhalter; Rickki L. Barnes; Bob J. Sharber; William D.
Sandell; William E. Shockley; Don Cutler; Nancy A.
Bomhoff; Vaughn Bryant; Warren Rex Chapin; Herman L.
Klaus; Willie L. Wixom; Billy O. Hawkins; Jack D.
Edwards; Rita Henry; Carl Holiday; Douglas Messel; Diane
J. Trigg; Tommy A. Howard; Norvell Lancaster; Bobby
Bowling; P.J. Warren; Robert C. Anderson; Doyle C. Adams;
Glenn D. Christians; Willard Terry; Bill Stewart; Jimmy
King; Richard Borne; Johnny Warmoth; Franklin A. Nieley;
Charles Norton; Glen Layton; Leo Thompson; D.L. Loman;
Marland Glover; Bobby Bennett; Jerry Chronister; Lawrence
White; Donald Fitz; Odis Ward; Donald T. Kendrix; Ruel
L. Monroe; Randall Johnston; Douglas Webb; Roger L.
Smith; Benny Shumway; Bobby Johnson; Theal Crews; Arnett
Richardson; Junior Lee Golden; Jim Bob Keith; Bob L.
Wilkerson; Jerry R. Kennedy; James L. Freeman; Marvin E.
Meek; Leroy Gray; Leroy Hill; Lealus Thomas; A.W.
Barnett; Donald L. Mayfield; Jimmie Masters; Jmwa E.
Poerwe; James E. Young; Rickey D. Allen; William W.
Partin; James E. Vap; Edith J. Vap; John Reynolds;
Arthur Golden; Joe C. Nixon; Willie Joseph; John H. Heil;
Donald H. Brechinsen; James Altizen; William T. Wimmer;
I.B. Boyd; E. Ferrell Bussing; Jimmie L. Williams; Roy J.
Sassano, Sr.; Eleanor C. Mowery; Eugene D. Rider; George
W. Baldwin; Garland R. Hooper; Earl Joslin; Karen Nydick;
Gerold Wagner; L.V. Foreman; Don Lepley; E.J. Fidler;
Claude W. Woeley; Fred M. Silver; Herbert L. Keith; Carl
E. Davis; Paul Goodman; Ronald C. Daudill; William P.
Dodd; Dennis S. Crews; Willis D. Keesee; Jerry D. Bass;
R.T. Skelton; Delbert D. Utsler; Don E. Bailey; Howard
Whittenberg; Marcia C. Long; A.C. Phillips; Jo Ann
Martin; Leon Combs; Jerry C. Forbes; J.R. Bishop; Billy
Reeves; Farrell J. Pickens; James Richard Howells;
Lawrence Shelton; Charles Huckabee; Jmwa Axheowswe;
Thomas Jaramillo; J. David Smith; W.T. Young; Carl H.
Davison; Sharon Key Harris; Lew F. Fresonke; Joe Knapp;
Lesley E. Chapman; R.D. Bivins; George W. Barton; Marion
A. Neal; Rebecca Crawford; Deatron I. Morgan; W.H.
Nevels; Jim Oliver; Clarence E. Smith; Robert Wilson;
Linda Lekawski; Michael Fundstein; Jerry L. Bender;
William D. Beery; Donald M. Larson; William J. Azlin;
Dwight W. Rogers; Judy A. Rogers; Walter R. Lewis;
Charles Huckaboy; Barbara Harwell; Rebecca Pearson; Molly
Hoffman; Patricia McCanlies; K.E. Sterrett; Thurman B.
Nelson; Nelda M. Carroll; Johnny Wallace; Guadalupe
Rodriguez; Raymond Davey; L.V. Davis; Bobby D. Price;
Gary L. Passon; Lanora Workman; John Davenport; Jimmie D.
Jennings; Leo Scruggs; Dallas Niblock; Leo Suggs;
Stanley W. Moore; John D. Horn; Anthony Spitzley; Manual
Sena; James F. Ayres; Daniel A. Sikorsky; Albert E. Oyos;
C.D. Ridgley; Earl Greene; Salvador C. Perez; Cesar B.
Sheen; Joe Manuel; Benjamin Saenz; Arturo C. Marquez;
Edward Lavelle; Robert Rognon; Bernardo Saenz; Protacio
S. Abrego; Steven Moylan; Carl M. Lavender; Ruben D.
Cota; Manuel F. Gamez; Narcizo Reaza; Frank M. Hernandez;
Ronald Murdock; Jesse Terrazas; Jimmie Rodriguez; Manuel
R. Barrera; Howard Wing; Robert R. Contreras; Joe C.
Nixon; Oscar J. Munoz; Theresa A. Wright; Dora Perkins;
W.H. Hohensee; W.R. Gunn; Bob Kwnnixurr; Kenneth D.
Williams; Javier Adame; Manuel M. Holquin; Harry Hill;
Rick Skinner; Harold Mitchell; Vince Wolpoff; Warren
Yoder; William Salinas; John D. Lent; Carl Christensen;
J.M. Ferez; Lisardo Jaramillo; Henry L. Hoskison; Bill
Bass; Bob Rognon; Fred Walling; Hector R. Mendoza;
Martin Bautista; Daniel A. Merkle; Roger A. Peterson;
Jack L. Bynum; Joel E. Henderson, Sr.; Marvin L. Wright;
C.R. Blades; Rolando L. Galindo; Esequiel Barcena; Floyd
L. Biddlecome, Sr.; Ramon A. Rodriguez; Ruben Williams;
Alva J. Chaney, Jr.; Ceasar Val Verde; Gilbert Hernandez;
Victor Juarez; John L. Washington; David L. Carney;
Thomas Jaranille; James D. Weston; Ronald R. Murdock;
Tony C. Gonzales; Richard A. Sanchez; Shirley F. Bennett;
Bobby Derring; Fulton Marks, Jr.; Adolfo Elias, Jr.; D.
Patrick Wright; Norman E. Cardwell; Robert M. Ferguson;
Don R. Wheeler; J. Brannon; Robert A. Wesley; Alvin D.
Fitzgerald; James E. Rowe; Alfred M. Martinez; Berry R.
Raymondo; Carroll C. Abel; Oscar G. Powell, Jr.; Alvin W.
Green; Huey A. Fredeiu; Ben Saenz; Harold R. Dagne;
Britt Ingrid Keith; Robert M. Turner,
Plaintiffs-Appellants-Cross-Appellees,
v.
COMMERCIAL LOVELACE MOTOR FREIGHT, INC., also known as C.L.
Motor Freight, doing business as Lee Way Motor Freight,
Inc.; M.T. Alcox; W.D. Persavich; C.C. McCracken; N.L.
Ingrum; H.J. Hill; G.W. McIntyre; Transportation
Equipment Services, Inc. and their directors; Edward L.
Mulcahy; Phillip White; H.F. Poston, Defendants-Appellees,
and
Pepsico, Inc., doing business as Lee Way Motor Freight,
Inc., a Delaware corporation, individually; S.E. Schroder;
James English; Lawrence F. Dickie; Judy Norman-Davis;
Richard Campbell, Defendants-Appellees-Cross-Appellants.
 Nos. 88-1253, 88-1750.
 United States Court of Appeals,
Tenth Circuit.
 July 12, 1991.
 
 1
 Joseph C. Long, Norman, Okl. (E.W. Keller and Trent Keller, Keller, Fernald & Keller, Oklahoma City, Okl., with him on the brief), for plaintiffs-appellants.
 
 
 2
 Harold H. Reader, II, Cleveland, Ohio, and Michael L. Brody, Schiff, Hardin & Waite, Chicago, Ill. (John R. Couch, James E. Golden, Jr., with them on the brief), for defendants-appellees M.T. Alcox, W.D. Persavich, C.C. McCracken, N.L. Ingrum, H.J. Hill, and G.W. McIntyre.
 
 
 3
 Charles C. Green, Oklahoma City, Okl., Roger Pascal, Michael L. Brody, Robert D. Campbell, Schiff, Hardin & Waite, Chicago, Ill., for defendants-appellees and cross-appellants Pepsico, Inc., Lawrence Dickie, James English, Judy Norman-Davis, Richard Campbell, and Sharon Schroder.
 
 
 4
 Before McKAY and SEYMOUR, Circuit Judges, and KANE,* District Judge.
 
 
 5
 KANE, Senior District Judge.
 
 
 6
 This appeal arises out of an action brought by more than four hundred former employees of Lee Way Motor Freight, Inc. against their former employer and others alleging violations of federal and Oklahoma securities law and common law fraud. After a segmented trial to the court on the issue of whether an interest in the instrument at issue, an employee stock ownership plan, constituted a security under federal law, the district court held that it did not and entered judgment for defendants on the federal securities claims. Finding no basis for federal jurisdiction over the plaintiffs' remaining state law claims, the court dismissed them in their entirety. This appeal and cross-appeal followed upon the court's denial of defendants' motion for costs and fees. We affirm in part and reverse in part.
 
 Background
 
 7
 The following facts are undisputed unless otherwise noted: Plaintiffs-appellants in this matter are 485 former union employees of Lee Way Motor Freight, Inc. (Lee Way), a common carrier engaged in the interstate and intrastate transportation of commodities. In 1976, Lee Way was acquired by defendant-appellee Pepsico, Inc., which operated the company as a wholly owned subsidiary until June 1984 when it agreed to sell Lee Way to defendant-appellee Commercial Lovelace Motor Freight, Inc. (CL). Because CL was also a common carrier, this sale was not finalized until the Interstate Commerce Commission (ICC) approved the transaction in August 1984. CL operated Lee Way pursuant to a management agreement with Pepsico pending ICC approval of the sale.
 
 
 8
 Shortly after taking over Lee Way's operations, CL began soliciting Lee Way employees to participate in a Wage Reduction Program (Program) that had been in place at CL since 1983. This Program, which was optional for plaintiffs and Lee Way's other union employees,[1] provided each participating union employee with an interest both in CL's existing company-administered employee stock ownership plan (CL ESOP) and a profit-sharing plan in return for the individual employee's agreement to a 17.35% reduction in the wages due him or her under the union's collective bargaining agreement. CL represented to Lee Way employees that the company would probably fail if they did not enroll in the Program. All of the plaintiffs in this action individually elected to participate in the Program. Less than a year later, CL merged with Lee Way and filed for bankruptcy. Lee Way's former assets were then allegedly reacquired by Pepsico.
 
 
 9
 In this action, plaintiffs allege that Pepsico's sale of Lee Way to CL and its subsequent reacquisition of Lee Way's assets upon CL's rapid demise were all part of a sham transaction designed to disguise Pepsico's intended and ultimately successful liquidation of Lee Way. Plaintiffs further allege that certain aspects of this sham transaction, including CL's solicitation of them to accept a wage reduction in return for an interest in the CL ESOP, violated federal and Oklahoma securities laws and constituted common law fraud. Plaintiffs seek various relief from defendants CL, Pepsico and officers and directors of both companies for these alleged transgressions, including, among other things, revocation of the plaintiffs' participation in the CL ESOP and recovery of more than $6 million in wages lost by plaintiffs as a result of their participation in the Wage Reduction Program.[2] Plaintiffs do not seek to recover benefits from the CL ESOP or otherwise enforce their rights as ESOP participants.
 
 
 10
 In their federal securities claim, plaintiffs allege that their interests in the CL ESOP were "investment contracts" subject to federal securities regulation pursuant to section 2(1) of the Securities Act of 1933 (1933 Act), 15 U.S.C. Secs. 77b(1) (1988) (defining "security" to include "investment contracts"), and section 3(a)(10) of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. Sec. 78c(a)(10) (1988) (same). Plaintiffs further allege that CL's solicitation of Lee Way employees to accept an interest in the CL ESOP as part of the Wage Reduction Program constituted a sale of an unregistered security and securities fraud in violation of Sections 5 and 17(A) of the 1933 Act, 15 U.S.C. Secs. 77e, 77q(a), and Section 10(b) of the 1934 Act, 15 U.S.C. Sec. 78j(b).
 
 
 11
 The defendants filed various motions to dismiss and for summary judgment challenging plaintiffs' threshold assertion that their ESOP interests were investment contracts subject to protection under the 1933 and 1934 Acts (collectively "Securities Acts"). The district court denied these motions, but did hold that in order to prove that their interests in the CL ESOP were investment contracts, plaintiffs would have to demonstrate that the ESOP was "a voluntary contributory [employee benefit] plan [that] otherwise fit within the definition of a security." Hupp v. Commercial Lovelace Motor Freight, No. CIV-84-2807-A (W.D.Okla. Aug. 1, 1986) (1986 Order). The district court then ordered a segmented trial "limited to the factual issues as to whether the ESOP is a security" under this legal standard. Id.
 
 
 12
 Following a bench trial on this issue in December 1987, the district court ruled that plaintiffs' ESOP interests were not investment contracts and hence not securities under federal law. Uselton v. Commercial Lovelace Motor Freight, Inc., CIV-84-2807-P (W.D.Okla. Jan. 29, 1988) (1988 Order). In reaching this result, the district court relied on its finding that the CL ESOP was a compulsory, noncontributory employee benefit plan and on the Supreme Court's holding in International Brotherhood of Teamsters v. Daniel, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), that such plans do not qualify as investment contracts under the three-part test first enunciated by the Court in SEC v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). 1988 Order at 14. The district court then entered judgment against plaintiffs' federal securities claims and dismissed their state law claims for lack of jurisdiction. Plaintiffs timely appealed this judgment. The Pepsico defendants[3] cross-appealed the district court's denial of their post-trial motion for costs and fees.
 
 
 13
 The parties have stipulated that the CL ESOP is an employee benefit plan that CL created and funded in March 1983 by issuing 4,001,000 shares (just more than fifty percent) of its common stock to the Central National Bank of Cleveland, Ohio, as Trustee for the plan. In return, CL received five promissory notes (Trust Notes) from the Trustee, each in the amount of $150,000, which were to mature serially from 1984 to 1988. Initially, CL held all of the plan's CL stock in pledge as security for the Trust Notes. As each Trust Note matured, however, the CL ESOP agreement required CL either to forgive the Trust Note then maturing or to make a cash contribution to the CL ESOP in the amount of the Trust Note so that the Trustee could pay off the Trust Note by redelivering the funds to CL. Once the annual Trust Note was paid by either of these methods, the ESOP agreement required CL to release 800,000 shares of the pledged stock to the ESOP to be allocated to the individual accounts of ESOP participants according to a formula stated in the ESOP agreement. This allocation formula was based on the ratio of each participant's compensation for a given year to the total compensation of all participants for that year. In the two years the CL ESOP operated, 1,600,000 CL shares were released to the ESOP and allocated to ESOP participants through these procedures. Under the terms of the ESOP, these allocations vested immediately with the ESOP participants.
 
 
 14
 All shares allocated to participating employees through the ESOP were derived from those initially issued to the Trust. No proceeds from the Program's wage reduction requirement were used to purchase CL stock or to otherwise fund the CL ESOP, no CL shares were ever purchased by the Trustee on the open market and no CL shares other than those initially issued by CL to the Trustee were ever acquired by the Trust. The CL ESOP agreement also prohibited participants from making direct monetary contributions to the CL ESOP and no such employee contributions were ever made. As an employee benefit plan, the CL ESOP was subject to regulation under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1001-1461 (1988).
 
 Discussion
 
 15
 The principal issue in this appeal and cross-appeal is whether the district court was correct in holding that plaintiffs' interests in the CL ESOP were not investment contracts and hence not "securities" subject to the protections of the Securities Acts. Other issues on appeal concern the district court's dismissal of plaintiffs' Oklahoma securities claims, several of the court's evidentiary rulings and its denial of the Pepsico defendants' motion for costs and fees. We address each of these issues in turn.
 
 A. Federal Securities Issue
 
 16
 The plaintiffs contend that the district court erred as a matter of law in holding that their interests in the CL ESOP were not investment contracts and hence not securities within the purview of the Securities Acts. We address this question in two steps. First, we consider the district court's holding that these ESOP interests are not investment contracts under the standards stated by the Supreme Court in Howey and Daniel. Following our conclusion that plaintiffs' ESOP interests are securities under these standards, we proceed to a legal question not reached by the district court, which is whether these interests are nonetheless outside the reach of the Securities Acts due to their regulation under ERISA.
 
 
 17
 In addressing these issues, we consider questions of law de novo, while reviewing the district court's decision on questions of fact under the clearly erroneous standard. Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir.1990). On the mixed question of whether the facts satisfy the proper legal standard, we conduct a de novo review if the question primarily involves the consideration of legal principles and apply the clearly erroneous standard if the question is primarily a factual inquiry. Love Box Co. v. Commissioner, 842 F.2d 1213, 1215 (10th Cir.), cert. denied, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988).
 
 
 18
 1. Whether the plaintiffs' interests in the CL ESOP were investment contracts
 
 
 19
 Plaintiffs contend that their interests in the CL ESOP qualify as securities under the Securities Acts because they are investment contracts. Under the Supreme Court's seminal decision in SEC v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the test to determine whether a financial relationship constitutes an investment contract is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." Id. at 301, 66 S.Ct. at 1104; see United Hous. Found., Inc. v. Forman, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060-61, 44 L.Ed.2d 621 (1975); Banghart v. Hollywood Gen. Partnership, 902 F.2d 805, 807 (10th Cir.1990). In applying this test, "the economic realities of the transaction--rather than the names that may have been employed by the parties," are determinative. Forman, 421 U.S. at 851-52, 95 S.Ct. at 2060-61.
 
 
 20
 The Supreme Court has had one opportunity since Howey to consider whether an employee benefit plan is an investment contract and hence a security under the Securities Acts. In that case, International Brotherhood of Teamsters v. Daniel, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), the question presented was whether a participant in a company pension plan could invoke the Securities Acts as part of an effort to recover benefits under the plan. See id. at 553, 555-56, 99 S.Ct. at 794-95. The Court held that he could not because: (1) the participant's interest in the pension plan failed the Howey test for an investment contract; (2) there was no congressional or administrative record of such plans being subject to federal securities regulation and (3) ERISA already provided participants in such plans with the right to challenge benefit determinations. See id. at 558-70, 99 S.Ct. at 795-802.
 
 
 21
 In applying the Howey test to the plaintiff's pension plan interest, the Court first identified the plan in question as a compulsory, noncontributory defined benefit plan. Id. at 553, 554 n. 3, 99 S.Ct. at 794 n. 3. This description indicates that the plaintiff, as an employee of his company, had no option but to participate in the plan, that he made no cash or other type of contribution specifically to the plan, see id., and that the benefits he expected to receive from the plan were fixed without reference to the success or failure of the plan's investments. See Cunha v. Ward Foods, Inc., 545 F.Supp. 94, 99 nn. 3-5 (D.Haw.1982), aff'd in part and rev'd in part on other grounds, 804 F.2d 1418 (9th Cir.1986); O'Neil v. Marriott Corp., 538 F.Supp. 1026, 1030 (D.Md.1982) (defining a voluntary plan); Tanuggi v. Grolier, Inc., 471 F.Supp. 1209, 1213 n. 3 (S.D.N.Y.1979) (defined benefit plan).
 
 
 22
 The Court determined that the plaintiff's interest in this type of employee benefit plan failed both the first and third prongs of the Howey test. The Court found that it failed Howey's initial "investment of money" requirement because the plan's noncontributory structure precluded the plaintiff from making the requisite investment at the same time that its involuntary component prevented him from making an affirmative investment decision "to give up a specific consideration in return for a separable financial interest with the characteristics of a security." Daniel, 439 U.S. at 559, 99 S.Ct. at 796. The Court also considered and rejected plaintiff's alternate contention that his labor provided the necessary "investment" in the pension plan, concluding instead that the plan was "a relatively insignificant part of [the plaintiff's] total and indivisible compensation package" so that "[h]is decision to accept and retain covered employment may have only an attenuated relationship, if any, to perceived investment possibilities of a future pension." Id. at 560, 99 S.Ct. at 797. As to Howey's final requirement, the Court held that the plaintiff's expected profits from his company's defined benefit plan were not dependent on entrepreneurial or managerial efforts of others, as required by Howey, because the plan's income consisted primarily of continuing employer contributions, "a source in no way dependent on the efforts of the [plan's] managers." Id. at 562, 99 S.Ct. at 797. In addition, the Court noted that the plan at issue required participants to meet "substantial" preconditions before their interests in the plan and hence in the plan benefits vested. Id. As a result, the Court found that even if the plan benefits were considered profit on some investment by the employee, "this profit would depend primarily on the employee's effort to meet the vesting requirements, rather than the [plan's] investment success." Id. (footnote omitted).
 
 
 23
 Since the Daniel decision, both this court and others have considered whether various types of employee benefits plans qualify as investment contracts under the Howey test. See, e.g., Salazar v. Sandia Corp., 656 F.2d 578, 581-82 (10th Cir.1981) (compulsory, noncontributory pension plan); Black v. Payne, 591 F.2d 83, 87-88 (9th Cir.) (compulsory, contributory employee benefit plan), cert. denied, 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979); Cunha, 545 F.Supp. at 99-101 (voluntary, contributory plan). The consensus from these decisions is that an employee benefit plan that is either noncontributory or compulsory is not an investment contract because it does not allow a participant to make the "investment" required by the first prong of the Howey test. See, e.g., Salazar, 656 F.2d at 582. The SEC concurs in this view. See Employee Benefit Plans, Securities Act Release No. 33-6188, 1 Fed.Sec.L.Rep. (CCH) p 1051 at 2073-8 to 2073-9 (Feb. 1, 1980) [hereinafter "SEC Release No. 33-6188"]; Employee Benefit Plans, Securities Act Release No. 33-6281, 1 Fed.Sec.L.Rep. (CCH) p 1052 at 2073-31 (Jan. 15, 1981) [hereinafter "SEC Release No. 33-6281"]. A number of courts have also held that certain voluntary, contributory employee benefit plans are not investment contracts, but only because specific aspects of each plan caused it to fail Howey's final requirement that the profits or benefits from the plan result from the efforts of others. See, e.g., Coward v. Colgate-Palmolive Co., 686 F.2d 1230, 1236-37 (7th Cir.1982), cert. denied, 460 U.S. 1070, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983); Cunha, 545 F.Supp. at 99-100; O'Neil, 538 F.Supp. at 1031; Tanuggi, 471 F.Supp. at 1214, 1216; Newkirk v. General Elec. Co., [1979-80 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 97,216, 1979 WL 1270 (N.D.Cal. Aug. 31, 1979).
 
 
 24
 In this case, the district court held that plaintiffs' interests in the CL ESOP were not investment contracts because the ESOP was neither contributory nor voluntary and thus failed Howey's "investment" requirement. 1988 Order at 14. The plaintiffs argue on appeal that both of these findings are incorrect as a matter of law, that their interests in the CL ESOP were in fact both voluntary and contributory and hence meet the first prong of the Howey test and that the ESOP otherwise satisfies Howey's requirements for establishing the existence of an investment contract. We agree with plaintiffs on each of these points.
 
 
 25
 The district court held that the CL ESOP was noncontributory because Lee Way employees made no monetary contributions to the plan through wage deductions or other means. 1988 Order at 14. This finding reflected the court's legal conclusion that an employee benefit plan must fit within the following definition of "contributory" in order to satisfy Howey's initial "investment of money" requirement:
 
 
 26
 2. "Contributory" plan means that the workers must be making payments into and enhancing the ESOP corpus, although these payments may be accomplished through some accounting system set up by the employer, the ESOP Trust or otherwise.
 
 
 27
 3. Neither lump sum [n]or periodic payments on behalf of the workers made by others will suffice for a contributory plan.
 
 
 28
 4. A mere showing that the employer obtained relief from its overhead obligation for wages, creating a savings from which it paid down the ESOP note, will not suffice.
 
 
 29
 1986 Order at 1-2.
 
 
 30
 This is an incorrect statement of Howey's "investment" requirement for two reasons. First, the district court's definition of "contributory" assumes that only direct monetary contributions will satisfy the requirement. In fact, and in spite of Howey's reference to an "investment of money," it is well established that cash is not the only form of contribution or investment that will create an investment contract. Instead, the "investment" may take the form of "goods and services," Daniel, 439 U.S. at 560 n. 12, 99 S.Ct. at 797 n. 12, or some other "exchange of value." Hocking v. Dubois, 885 F.2d 1449, 1471 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990); see Yoder v. Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 560-61 (2d Cir.1985) (stating that a person who commits herself to employment in return for the promise of stock in her employer's company makes the necessary investment in her company's securities to form an investment contract); Dubin v. E.F. Hutton Group, Inc., 695 F.Supp. 138, 145-44 (S.D.N.Y.1988) (holding that plaintiff's acceptance of employment based in part on the value of a promised interest in his employer's equity ownership plan resulted in the sale of a security). Thus, the fact that the terms of the CL ESOP did not permit employees to make direct monetary contributions to it is not determinative of whether Lee Way's union employees invested in or contributed to the CL ESOP as required by the first prong of the Howey test.
 
 
 31
 The legal standard employed by the district court also errs in focusing solely on the terms of the CL ESOP to determine whether plaintiffs contributed to the plan. The proper inquiry was whether the economic realities of the transaction as a whole demonstrated an investment or "an exchange of value" by the plaintiffs. See Forman, 421 U.S. at 849, 851, 95 S.Ct. at 2059, 2060; Hocking, 885 F.2d at 1471. Here, it is undisputed that the transaction in question, plaintiffs' election to participate in CL's Wage Reduction Program, required plaintiffs and Lee Way's other union employees to surrender a portion of the wages due them under a valid collective bargaining agreement in exchange for an interest in the CL ESOP and the profit-sharing plan. The economic reality of the transaction, therefore, was that plaintiffs contributed their legal right to a portion of their wages to CL in return for the right to acquire CL stock via the CL ESOP and to participate in CL's profit-sharing plan. At least two courts have held that employee contributions of this sort constitute sufficient tangible and definable consideration to serve as an "investment" or "contribution" to an employee benefit plan for purposes of the Howey test. See Hood v. Smith's Transfer Corp., 762 F.Supp. 1274, 1291 (W.D.Ky.1991); Harris v. Republic Airlines, Inc., [1987-88 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 93,772 at 98,625-26, 1988 WL 56256 (D.D.C. May 18, 1988). We agree with this conclusion and accordingly hold, under the proper legal standard and the undisputed facts of this case, that plaintiffs' interests in the CL ESOP were contributory as a matter of law.
 
 
 32
 We also conclude as a matter of law that the district court erred in holding that plaintiffs' participation in the CL ESOP was involuntary and thus precluded them from having any investment motive in joining the plan. See 1988 Order at 14. The district court based this conclusion on its factual finding that plaintiffs felt they had no choice but to join the Wage Reduction Program if they wanted to save Lee Way and their jobs. Id. at 13, 14. We have several difficulties with holding the CL ESOP to be an involuntary plan on this basis. First, the established definition of a voluntary plan is simply a plan that permits employees to elect whether or not to participate. See Salazar, 656 F.2d at 581; Cunha, 545 F.Supp. at 99 n. 4; O'Neil, 538 F.Supp. at 1030; SEC Release No. 33-6188 at 2073-6 n. 19. This definition is consistent with the Supreme Court's statement in Daniel that an investor is someone who "chose to give up a specific consideration in return for a separable financial interest with the characteristics of a security." Daniel, 439 U.S. at 559, 99 S.Ct. at 796. Applying this legal standard to this case, there is no question that participation in the CL ESOP was in fact voluntary for Lee Way's union employees because each such employee had the option of either accepting CL's Wage Reduction Program or of continuing employment under the terms of the existing union contract. There is also no question that each union employee who joined the CL ESOP gave up specific consideration, i.e., a portion of his or her wages, in return for a separable financial interest in the CL ESOP. Each employee's interest in the CL ESOP, moreover, translates into an interest in CL stock, an interest having all of the characteristics of a security.[4] No more than this is required to prove that Lee Way's union employees were investors making an investment decision when they individually agreed to give up a portion of their wages in return for an interest in the CL ESOP. See id.[5]
 
 
 33
 We also disagree with the district court's legal conclusion that the plaintiffs' desire to save Lee Way and their jobs negated their otherwise voluntary decision to invest in the CL ESOP through the Wage Reduction Program. In fact, the "save the company, save our jobs" motive identified by the district court is consistent with a traditional investment motive because each is concerned with and makes an investment in the future of the company.[6] Thus, we find no basis for the district court's holding that this motive made plaintiffs' participation in the CL ESOP involuntary or otherwise prevented them from acting as investors when they elected to participate in the CL ESOP. See Hood, 762 F.Supp. at 1290 (holding that employees' participation in ESOP was voluntary even though employer represented to employees that company's survival depended on employees' acceptance of wage reduction/ESOP package).[7]
 
 
 34
 Because the CL ESOP was a voluntary, contributory employee benefit plan for Lee Way's union employees, their interests in the ESOP resulted from their "investment" in the ESOP, thus satisfying the first prong of Howey's test for an investment contract. See Cunha, 545 F.Supp. at 99-100. The question remains, however, whether these interests also satisfy Howey's final two requirements that these interests concern "a common enterprise" in which profits "come solely from the efforts of others." Howey, 328 U.S. at 301, 66 S.Ct. at 1104. The district court did not reach this question because it found Howey's initial investment requirement to be dispositive.
 
 
 35
 Upon review of the record, we hold that the plaintiffs' ESOP interests satisfy both of these requirements as a matter of law. There is no dispute that the CL ESOP qualifies as a common enterprise and thus satisfies the second prong of the Howey test. See Childers v. Northwest Airlines, Inc., 688 F.Supp. 1357, 1363 (D.Minn.1988); Harris, [1987-88 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 93,772 at 98,624. Howey's final requirement is met if the enterprise can reasonably be expected to produce profits in the form of capital appreciation or participation in earnings resulting from the investment, Forman, 421 U.S. at 852, 95 S.Ct. at 2060-61, and the success or failure of the enterprise is significantly affected by the managerial or entrepreneurial efforts of persons other than the investor.[8] See Banghart, 902 F.2d at 807; SEC v. Goldfield Deep Mines Co., 758 F.2d 459, 463 (9th Cir.1985). Both of these requirements are met in this case because any profit on plaintiffs' ESOP interest would occur through dividend distributions and appreciation in the value of the stock allocated to their accounts, which in both cases would result primarily from the efforts CL's managers and its employees. Thus, "[e]ach employee that invested in the [Wage Reduction Program] was dependent on the efforts of others to realize any benefits from his or her investment decision." Harris, [1987-88 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 93,772 at 98,624. This fact distinguishes the CL ESOP from other voluntary, contributory employee benefit plans that have failed this final prong of the Howey test. See, e.g., Coward, 686 F.2d at 1236-37; Cunha, 545 F.Supp. at 99-100;[9] O'Neil, 538 F.Supp. at 1031; Tanuggi, 471 F.Supp. at 1214, 1216; Newkirk, [1979-80 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 97,216.[10] Accordingly, plaintiffs' interests in the CL ESOP satisfy this final Howey requirement. Having previously concluded that plaintiffs' interests in the CL ESOP satisfy Howey's other requirements for establishment of an investment contract, we therefore hold that these interests were investment contracts and hence securities under the Securities Acts.
 
 
 36
 The defendants contend that the Supreme Court's Daniel decision requires a different result and supports the district court's decision that plaintiffs' interests in the CL ESOP are not securities. In making this argument, they focus on the Court's rejection of the employee's assertion that the labor he provided his employer constituted an "investment" in the employer's compulsory, noncontributory pension plan. The Court rejected this argument because:
 
 
 37
 In a pension plan such as this one, ... the purported investment is a relatively insignificant part of an employee's total and indivisible compensation package.... Only in the most abstract sense may it be said that an employee "exchanges" some portion of his labor in return for these possible benefits. He surrenders his labor as a whole, and in return receives a compensation package that is substantially devoid of aspects resembling a security. His decision to accept and retain covered employment may have only an attenuated relationship, if any, to perceived investment possibilities of a future pension. Looking at the economic realities, it seems clear that an employee is selling his labor primarily to obtain a livelihood, not making an investment.
 
 
 38
 Daniel, 439 U.S. at 560, 99 S.Ct. at 797 (footnote omitted). Similarly, defendants argue, the economic reality of this transaction is that plaintiffs sold their labor to CL in order to obtain a compensation package that only incidentally included participation in the CL ESOP.
 
 
 39
 The difficulty with this argument is that it ignores that Lee Way's union employees did more than merely contribute labor to obtain an interest in the CL ESOP. Instead, each deliberately chose to surrender his or her right to a percentage of a preexisting compensation package in return for an ESOP interest. Thus, each contributed specific consideration for his interest, rather than merely exchanging labor for an indivisible compensation plan that incidentally provided for participation in a pension plan. The Supreme Court's holding that no investment contract existed with respect to the employee benefit plan and transaction before it in Daniel is not, therefore, determinative of this same question presented in the context of the very different plan and transaction at issue in this case.[11] For the reasons set out in our discussion of the Howey test, we also conclude that our decision that plaintiffs' voluntary, contributory participation in the CL ESOP created an investment contract under Howey's three-part test is fully consistent with the Supreme Court's statement and application of that test in Daniel.[12]
 
 
 40
 Our decision that the CL ESOP is an investment contract is also consistent with Daniel for another reason. In that case, the Supreme Court concluded that plaintiff's pension plan interest was not a security in part because there was no administrative or congressional record interests in such plans being subject to regulation under the Securities Acts. See id. at 563-69, 99 S.Ct. at 798-02. As the Daniel Court noted, however, this is not true as to voluntary, contributory employee benefit plans. See id. The SEC has long distinguished voluntary, contributory employee benefit plans from other types of benefit plans and maintained that such voluntary, contributory plans are "securities" for purposes of the Securities Acts.[13] This consistent and long-standing agency interpretation of the status of employee interests in voluntary, contributory employee benefit plans under the Securities Acts is entitled to considerable weight unless it violates the "clear meaning of [the] statute, as revealed by its language, purpose, and history." Daniel, 439 U.S. at 566 n. 20, 99 S.Ct. at 800 n. 20; see also United States v. National Ass'n of Sec. Dealers, Inc., 422 U.S. 694, 719, 95 S.Ct. 2427, 2442-43, 45 L.Ed.2d 486 (1975).
 
 
 41
 Congress has also long demonstrated its belief and implied intent that at least some employee benefit plans, and particularly voluntary, contributory plans, are subject to federal securities regulation. In 1934, for example, it rejected an express attempt to exempt employee stock investment plans from the definition of securities under the Acts, basing this decision "on the ground that the participants in [such] plans may be in as great a need of the protection afforded by availability of information concerning the issuer for which they work as are most other members of the public." H.R.Conf.Rep. No. 1838, 73d Cong., 2d Sess. 41 (1934). In 1970, Congress also recognized by implication that some employee benefit plans were subject to the Securities Acts when it amended the 1933 Act to exempt certain employee benefit plans from the Act's registration requirements. See Pub.L. No. 91-547 (Dec. 14, 1970) and Pub.L. No. 91-567 (Dec. 22, 1970), codified at 1933 Securities Act, Sec. 3(a)(2), 15 U.S.C. Sec. 77c(a)(2). Congress' consideration and rejection of a bill that would have expressly exempted interests in all employee benefit plans from the antifraud provisions of the Securities Acts is also evidence that it considered at least some such interests to be otherwise subject to regulation under these Acts. See S.209, 96th Cong., 1st Sess. (Feb. 8, 1979). In a report analyzing the need to enact ERISA, the Senate focused on the plans subject to such regulation when it described its understanding that "[p]ension and profit-sharing plans are exempt from coverage under the Securities Act of 1933 ... unless the plan is a voluntary contributory pension plan and invests in the securities of the employer company in an amount greater than that paid into the plan by the employer."[14] Interim Report of Activities of the Private Welfare and Pension Plan Study, 1971, S.Rep. No. 634, 92d Cong., 2d Sess. 96 (1972) (emphasis added). Thus, unlike the situation in Daniel, the administrative and congressional record regarding the employee benefit plan at issue here, the voluntary, contributory CL ESOP, supports our decision that the plaintiffs' interests in this plan are securities.
 
 
 42
 2. The effect of alternate federal regulation of plaintiffs' ESOP interests under ERISA
 
 
 43
 Even if the district court erred in concluding that plaintiffs' interests in the CL ESOP were not investment contracts, its judgment that plaintiffs' ESOP interests fall outside the protection of the Securities Acts may nonetheless be affirmed if the "context" of these interests supports this result. 15 U.S.C. Secs. 77b(1), 78c(a)(10) (defining an "investment contract" to be a federally protected "security" "unless the context otherwise requires"). In Holloway v. Peat, Marwick, Mitchell & Co., 879 F.2d 772 (10th Cir.1989) (Holloway I ), we relied on this language as interpreted by the Supreme Court in Marine Bank v. Weaver, 455 U.S. 551, 557-59, 102 S.Ct. 1220, 1224-25, 71 L.Ed.2d 409 (1982), and Daniel, 439 U.S. at 569-70, 99 S.Ct. at 801-02, to hold that "[e]ven if the instruments [at issue] potentially qualify as securities because of the factual circumstances underlying the transactions, the context of other federal regulation may still remove these instruments from the federal securities laws." Holloway I, 879 F.2d at 783.[15] In this case, it is undisputed that the CL ESOP and plaintiffs' rights as participants in this ESOP are extensively regulated under ERISA, thus requiring us to determine whether this alternate federal regulation removes the plaintiffs' CL ESOP-investment contracts from the realm of federal securities laws.
 
 
 44
 The test under Holloway I for determining whether the existence and application of nonsecurities-related federal regulation bars application of the Securities Acts is whether "such alternate federal regulation accomplishes the same purposes as the securities laws, thereby making the securities laws' protections for investors duplicative and unnecessary." Holloway I, 879 F.2d at 778 (citing and construing Marine Bank, 455 U.S. at 557-59, 102 S.Ct. at 1224-25; Daniel, 439 U.S. at 569-70, 99 S.Ct. at 801-02); see also Holloway I, 879 F.2d at 783-84, 786. As we described in Holloway I, the fundamental purpose of these laws is protection of the investor " 'from the sale of worthless securities through misrepresentation.' " Id. at 786 (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 756 F.2d 230, 237 (2d Cir.1985)). The Securities Acts achieve this purpose by two means: (1) requiring disclosure to investors of "relevant, accurate information upon which to base an investment decision" and (2) providing "meaningful remedies for investors when the antifraud provisions of the laws have been violated." Id. at 786. If alternate federal regulation "abundantly protects" the investor on both of these counts, then this regulation may displace application of the federal securities laws. Id. (citing Marine Bank, 455 U.S. at 558-59, 102 S.Ct. at 1224-25). The purpose behind at least the first of the Securities Acts' protective provisions may also be served if, "in lieu of full disclosure to investors of relevant, accurate information upon which to base an investment decision, investors are protected by another entity that acts on their behalf to monitor the issuing entity and to take corrective actions to protect their investments." Id.
 
 
 45
 Plaintiffs argue that ERISA does not displace application of the Securities Acts in this case for two reasons. First, they contend that ERISA does not provide the necessary "abundant protection" for their investment in the CL ESOP as required by Holloway I. Second, they argue that even if ERISA did provide such protection, this duplicate federal regulation does not prevent application of the Securities Act in this case because both Congress and the SEC have indicated that voluntary, contributory employee benefit plans, such as CL ESOP, are subject to federal securities regulation notwithstanding the existence of possibly duplicative ERISA regulation. The Pepsico defendants argue in turn that both of these arguments must fail, and that the district court's judgment must be affirmed, because the Supreme Court previously decided in Daniel that ERISA preempts application of the Securities Acts to all forms of employee benefit plans. Each of these arguments is discussed below.
 
 
 46
 a. Investor protection under ERISA
 
 
 47
 In Holloway I, we held that alternate federal regulation must fulfill both the disclosure and remedial purposes of the Securities Acts before it will displace the protections offered by these Acts. 879 F.2d at 786. The first of these purposes is met if the alternate federal regulation either compels the disclosure of "relevant, accurate information upon which to base an investment decision" or allows the federal regulators to act on behalf of investors "to monitor the issuing entity and to take corrective actions to protect their investments." Id. In this case, defendants argue that the extensive disclosure and reporting requirements imposed on plan administrators under ERISA satisfy this requirement. As plaintiffs point out, however, all of these disclosure requirements apply only to individuals who are already participants or beneficiaries[16] of an ERISA-regulated benefit plan.[17] See 29 U.S.C. Sec. 1021(a) (1988); 29 C.F.R. Part 2520, Subpart F (1990); see Childers, 688 F.Supp. at 1361 (ERISA disclosure provisions only extend to plan participants and beneficiaries). Thus, ERISA, unlike the Securities Acts, does not require plan administrators or promoters to provide any information about the plan to individuals who are considering whether to become plan participants. See 15 U.S.C. Sec. 77e(b) (requiring issuer of security to provide prospectus to potential investor unless security is exempt from registration).
 
 
 48
 The focus of ERISA's disclosure requirements, moreover, is on informing plan participants of their rights and obligations under the plan, and not on distributing information regarding the plan's financing or its financial soundness. See 29 U.S.C. Sec. 1022(b) (only financial information required to be disclosed to participants under ERISA is "the source of financing of the plan and the identity of any organization through which benefits are provided"); 29 C.F.R. Sec. 2520.102-3(q) (same). Although detailed financial information, such as that subject to disclosure under the Securities Acts, see 15 U.S.C. Secs. 77e, 77g, 77aa (Schedule A),[18] is available to an ERISA plan participant upon request, see 29 U.S.C. Sec. 1024(b)(2), (4) (plan administrator must provide participants with plan's annual report upon request); id. at Sec. 1023 (requiring annual report to include detailed financial information), it is not automatically provided to plan participants or available at all to prospective participants. Accordingly, ERISA does not, as Holloway I and the Securities Acts require, compel the disclosure of "relevant, accurate information upon which to base an investment decision." Holloway I, 879 F.2d at 786.
 
 
 49
 It is less clear whether ERISA nonetheless satisfies the information disclosure purpose of the Securities Acts by granting federal regulators sufficient authority to monitor ERISA plans and to take corrective action on behalf of plan "investors." See id. The necessary monitoring authority may be provided by virtue of ERISA's requirement that plan administrators file annual reports with the Secretary of Labor. See 29 U.S.C. Sec. 1023. The Secretary's authority to enforce ERISA's funding requirements and fiduciary responsibilities on plan administrators by civil or administrative action, see id. Sec. 1132(a)(2), (5); see also id. Secs. 1081-1086 (funding requirements), 1101-1114 (fiduciary duties), also provides federal regulators with some authority to take "corrective action" on behalf of plan participants "to protect their investments." See Holloway I, 879 F.2d at 786. In order for this corrective action authority to take the place of the Securities Acts' disclosure provisions, however, it must essentially guarantee the individual's investment. Holloway I, 879 F.2d at 788; see Marine Bank, 455 U.S. at 558-59, 102 S.Ct. at 1224-25 (federal banking regulations guaranteeing certificates of deposit displaces federal securities regulation of these certificates). The Secretary's authority to enforce ERISA's funding and fiduciary obligations does not meet this standard with respect to ESOP investments because the value of these investments is entirely dependent on the value of the employer company's stock, and hence on the financial soundness and future prospects of the employer itself, rather than on the employer's continued funding and proper management of plan assets. Accordingly, the Secretary's monitoring and corrective authority under ERISA does not provide "the 'virtual guarantee' necessary to displace the protection of the securities laws" and its disclosure provisions. Holloway I, 879 F.2d at 788 (quoting Marine Bank, 455 U.S. at 558-59, 102 S.Ct. at 1225).
 
 
 50
 Even if the Secretary's monitoring and enforcement authority under ERISA fulfilled the underlying purpose of the Securities Acts' disclosure requirements, we would still find that ERISA does not satisfy Holloway I's test for displacement of the Securities Acts because it fails to provide a meaningful remedy to plan participants who allege that plan administrators or promoters acted fraudulently in inducing them to join the plan. See Holloway I, 879 F.2d at 786 ("[T]he purposes of the federal securities acts cannot be effectively carried out unless the alternate federal regulation provides for a meaningful [antifraud] remedy to investors.") The Securities Acts provide such a remedy through section 10(b) of the 1934 Act, 15 U.S.C. Sec. 78j(b), and SEC Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 (1990), which together authorize private damage actions by investors to recover from persons who make untrue statements of material facts or otherwise act fraudulently in connection with the purchase or sale of a security. See Holloway I, 879 F.2d at 786; see generally T. Hazen, The Law of Securities Regulation Sec. 13.2 (2d ed. 1990). The Securities Acts also permit investors fraudulently induced to enter into an investment transaction to rescind that transaction and recover the amount of their investment. See, e.g., Hatrock v. Edward D. Jones & Co., 750 F.2d 767, 773 n. 4 (9th Cir.1984); see generally Hazen at Sec. 13.7.
 
 
 51
 Neither the parties nor our research has produced any authority indicating that ERISA provides such a remedy for misrepresentation or other fraudulent acts committed in connection with an individual's decision to join an ERISA-regulated plan. ERISA's civil enforcement provision grants plan participants and beneficiaries the right to bring a private action to recover benefits under a plan, see 29 U.S.C. Sec. 1132(a)(1); to enforce ERISA's plan disclosure, funding, and administrative requirements, see id. Sec. 1132(a)(3), (4); and to obtain "appropriate relief" for breach of fiduciary duty by an ERISA plan administrator or other person who exercises discretionary control or authority over the plan or its assets. See id. Secs. 1132(a)(2), 1109 (ERISA liability for breach of fiduciary duty), 1002(21) (defining fiduciary). Only this latter provision regarding breach of fiduciary duty might possibly address fraud committed in connection with an investor's initial decision to join an ERISA plan. Those courts that have considered the issue, however, have held that the fiduciary relationship necessary to state such a claim does not come into existence until an individual becomes an ERISA plan participant, thus denying participants an ERISA remedy for fraud or misrepresentation that occurred before and in connection with their decision to join the plan. See Isaac v. Life Investors Ins. Co., 749 F.Supp. 855, 863 (E.D.Tenn.1990); Coleman v. General Elec. Co., 643 F.Supp. 1229, 1235 (E.D.Tenn.1986), aff'd, 822 F.2d 59 (6th Cir.1987); see also Klank v. Sears, Roebuck & Co., 735 F.Supp. 260, 263 (N.D.Ill.1990) (employee who was neither a plan participant nor a beneficiary could not state an ERISA claim against his employer for failure to provide him with information regarding participation in the employer's ERISA plan).
 
 
 52
 Other authority regarding this issue also indicates that ERISA does not provide a remedy for the type of misconduct that is alleged in this case and is prohibited by the Securities Acts.[19] In Perry v. P*I*E Nationwide, Inc., 872 F.2d 157 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990), for example, plaintiffs, like the plaintiffs in this case, were employees of a long-distance motor carrier that successfully solicited them to accept a significant wage reduction in return for participation in an ERISA-regulated ESOP. Id. at 158-59. After the company took actions in conflict with representations allegedly made to plaintiffs-employees during the solicitation process, plaintiffs sought rescission of their plan participation and restitution of the agreed wage reduction under theories of common law fraud and misrepresentation. Id. at 158-59, 161-62. The defendant employer moved to dismiss the action on the ground that these state law claims were preempted by section 1144(a) of ERISA because they "related to" an ERISA-regulated plan. See id. at 158. The district court denied the motion on the ground that plaintiffs' claims related to the manner in which the defendant employer procured plaintiffs' agreement to the wage reduction program rather than to the administration of the ESOP or plaintiffs' benefits under the plan. Id. at 159. The Sixth Circuit affirmed this result because "[g]iving plaintiffs the benefit of some doubt in this respect, we are uncertain whether 29 U.S.C. Sec. 1132 provides, under the circumstances of this case, an adequate remedy to redress the wrongs claimed, specifically, rescission and refund of wage reductions."[20] Id. at 162.
 
 
 53
 Even if ERISA did permit a cause of action for rescission of an employee's participation in a plan and restitution of his or her contributions in cases of fraudulent inducement, there is a split in the circuits as to whether this or any other claim for breach of fiduciary duty can be brought against parties who are not, in fact, plan fiduciaries as defined by ERISA. Compare Nieto v. Ecker, 845 F.2d 868, 873 (9th Cir.1988) (nonfiduciaries are not liable under ERISA) with Brock v. Hendershott, 840 F.2d 339, 342 (6th Cir.1988) (nonfiduciaries are liable under ERISA) and Lowen v. Tower Asset Management, Inc., 829 F.2d 1209, 1220 (2d Cir.1987) (same). ERISA defines a plan fiduciary as a person who
 
 
 54
 exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, renders investment advice for a fee or other compensation ... with respect to any moneys or other property of such plan, or has authority or responsibility to do so, or has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 55
 29 U.S.C. Sec. 1002(21)(A). Under this definition, at least some of the defendants in this case, including Pepsico and its officers and directors, are likely to be deemed nonfiduciaries under the statute. Given the uncertainty of their amenity to suit under ERISA,[21] it cannot be said that ERISA "abundantly" protects plaintiffs by providing them with a remedy for fraud allegedly committed by these defendants and others in inducing plaintiffs to join the CL ESOP.[22]
 
 
 56
 As discussed above, Holloway I only permits ERISA to displace federal securities regulation of the CL ESOP and other employee benefit plans if ERISA duplicates the protection offered to plaintiffs by the Securities Acts' disclosure and antifraud provisions. ERISA fails both of these tests. Accordingly, we hold that ERISA does not provide sufficient protection to plan participants to displace application of federal securities laws to plaintiffs' interests in the CL ESOP.
 
 
 57
 b. Continued federal regulation of voluntary, contributory employee benefit plans under both ERISA and the Securities Acts
 
 
 58
 Plaintiffs also argue in the alternative that even if ERISA duplicates the investor protection provided to plaintiffs by the Securities Acts, this duplication has no effect on the "securities" status of interests in voluntary, contributory employee benefit plans such as the CL ESOP. They base this claim on the SEC's assertion, even after ERISA, that these types of plans continue to be subject to regulation under the Securities Acts. See, e.g., SEC Release No. 33-6188 at 2073-9 to 2073-11. As noted earlier, this agency interpretation of its regulatory authority is entitled to considerable weight unless it violates "the clear meaning of [the] statute, as revealed by its language, purpose, and history."[23] Daniel, 39 U.S. at 566 n. 20, 99 S.Ct. at 800 n. 20; see also National Ass'n of Sec. Dealers, 422 U.S. at 719, 95 S.Ct. at 2442-43.
 
 
 59
 In fact, there is evidence that Congress intended for the SEC to continue regulating employee benefit plans that qualified as securities even after ERISA. In ERISA itself, for example, Congress expressly excluded state securities regulation from preemption under the statute, thus permitting states that had followed the SEC in finding interests in voluntary, contributory plans to be securities to continue in this practice.[24] See 29 U.S.C. Sec. 1144(b)(2)(A). In section 1144(d), Congress further provided that ERISA was not intended to supersede any existing federal law, thus allowing the SEC to continue regulating qualifying employee benefit plans as it always had. See id. Sec. 1144(d). In 1979, Congress also considered and rejected a bill that, among other provisions, would have amended ERISA to specifically remove interests in employee benefit plans from the definition of "security" for purposes of the antifraud provisions of the Securities Acts. See S. 209, 96th Cong., 1st Sess. (Feb. 8, 1979). These congressional actions are consistent with the SEC's determination that at least some voluntary, contributory plans are investment contracts subject to federal securities regulation and support plaintiffs' claim that Congress knew and approved of continued SEC regulation of such plans when it enacted ERISA in 1974. We therefore hold that even if ERISA duplicates the investor protection offered by the Securities Acts to the plaintiffs in this case, this alternate federal regulation does not prevent plaintiffs from establishing that their interests in the voluntary, contributory CL ESOP are securities or bar them from invoking the Securities Acts to protect these interests.
 
 
 60
 The Pepsico defendants again rely on the Supreme Court's decision in Daniel to argue against both this result and our general holding that ERISA has no effect on the status of plaintiffs' ESOP interests as securities. In particular, these defendants maintain that Daniel essentially decided that interests in all employee benefit plans, including voluntary, contributory plans, are not subject to regulation under the Securities Acts. This position is based on the Court's statements concerning ERISA's effect on the status of involuntary, noncontributory pension plans under the Securities Acts:
 
 
 61
 If any further evidence were needed to demonstrate that pension plans of the type involved [a compulsory, noncontributory plan] are not subject to the Securities Acts, the enactment of ERISA in 1974, would put the matter to rest. Unlike the Securities Acts, ERISA deals expressly and in detail with pension plans. ERISA requires pension plans to disclose specified information to employees in a specified manner, in contrast to the indefinite and uncertain disclosure obligations imposed by the antifraud provisions of the Securities Acts. Further, ERISA regulates the substantive terms of pension plans, setting standards for plan funding and limits on the eligibility requirements an employee must meet. For example, with respect to the underlying issue in this case--whether respondent served long enough to receive a pension--Sec. 203(a) of ERISA now sets the minimum level of benefits an employee must receive after accruing specified years of service, and Sec. 203(b) governs continuous-service requirements. Thus, if respondent had retired after Sec. 1053 took effect, the Fund would have been required to pay him at least a partial pension. The Securities Acts, on the other hand, do not purport to set the substantive terms of financial transactions.
 
 
 62
 The existence of this comprehensive legislation governing the use and terms of employee pension plans severely undercuts all arguments for extending the Securities Acts to noncontributory, compulsory pension plans. Congress believed that it was filling a regulatory void when it enacted ERISA, a belief which the SEC actively encouraged. Not only is the extension of the Securities Acts by the court below unsupported by the language and history of those Acts, but in light of ERISA it serves no general purpose. Whatever benefits employees might derive from the effect of the Securities Acts are now provided in more definite form through ERISA.
 
 
 63
 We hold that the Securities Acts do not apply to a noncontributory, compulsory pension plan.
 
 
 64
 Daniel, 439 U.S. at 569-70, 99 S.Ct. at 801-02 (citations omitted).
 
 
 65
 Contrary to the Pepsico defendants' assertion, this language indicates that Daniel's ultimate holding, as well as most of its statements regarding the interplay between ERISA and the Securities Acts, are limited to the status of noncontributory, compulsory plans under these Acts. To the extent that the Court's broader statements comparing ERISA and the Acts' disclosure and remedial provisions are more than dicta, they are also distinguishable from this case because of the differences between the claims made in Daniel and those made here. In Daniel, the plaintiff was seeking to recover benefits under a pension plan on the grounds that the defendants had misrepresented certain aspects of his eligibility for plan benefits. See 439 U.S. at 554-555, 569, 99 S.Ct. at 801-02. As the Supreme Court noted in the language quoted above, this is precisely the type of claim that ERISA is intended to address. In this case, on the other hand, plaintiffs seek return of their investment in the CL ESOP, rather than a determination of the benefits due them under that benefit plan, on the ground that defendants committed fraud in inducing them initially to enter into the plan. As described earlier in this opinion, ERISA does not provide a remedy for this type of fraudulent behavior. Accordingly, Daniel does not require us to hold that ERISA provides such ample investor protection to plaintiffs' interests in the CL ESOP that it displaces regulation of these interests under the Securities Acts.
 
 B. Other Issues on Appeal
 
 66
 Both plaintiffs and the Pepsico defendants also raise a number of additional issues on appeal. Plaintiffs first contend that the district court erred by dismissing their claims under the Oklahoma Securities Act on grounds of federal preemption, and then urge us to hold, as a matter of law, that their ESOP interests are securities under this act. The record, however, indicates that the district court dismissed plaintiffs' state security claims upon finding no basis for federal jurisdiction after dismissal of the federal securities claims, rather than on the basis of federal preemption. 1988 Order at 14-15. Given this record and our holding that dismissal of these federal claims was error, we reverse and remand the district court's dismissal of the state securities claims without reaching plaintiffs' contentions regarding the status of their ESOP interests under Oklahoma securities law.
 
 
 67
 The plaintiffs also assert that the district court abused its discretion in prohibiting them from introducing evidence at trial concerning the profit-sharing component of the Wage Reduction Program. As plaintiffs implicitly admit in their brief, their request to admit evidence on this point amounted to a request for leave to amend their complaint. See Brief of Petitioner at 43-45. Although leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), whether leave should be granted is left to the trial court's discretion. Las Vegas Ice & Cold Storage Co., 893 F.2d at 1185. In this case, plaintiffs had twice been granted leave to amend their complaint before this last request. The issues to be resolved at trial had been set for more than a year and trial was scheduled to begin in three months. Given these facts, we will not say that the district court abused its discretion in denying plaintiffs leave to amend. See id. (untimeliness alone may be a sufficient basis for denial of leave to amend).
 
 
 68
 Plaintiffs' final claim on appeal is that the district court abused its discretion when it excluded certain of plaintiffs' exhibits, namely a series of payroll slips, from trial on the ground that they had not been designated as trial exhibits as required by a pretrial order. In light of the clear wording of the pretrial order, we find no abuse of discretion in this ruling.[25]
 
 
 69
 The Pepsico defendants also cross-appeal the district court's denial of their post-trial motion for costs and fees pursuant to 28 U.S.C. Sec. 1927 and Rule 11 of the Federal Rules of Civil Procedure. These defendants allege that they are entitled to such costs and fees due to the plaintiffs' persistence in asserting that their wage reductions were paid into or otherwise contributed to the CL ESOP and that they made a voluntary investment decision. Given our determination on appeal that both of these statements were correct as a matter of law, we find no abuse of discretion in the district court's refusal to award sanctions.
 
 
 70
 The judgment of the United States District Court for the Western District of Oklahoma is therefore AFFIRMED with respect to its determination of the pleading, evidentiary and sanction issues discussed above. The district court's dismissal of plaintiff's federal and state securities claims is REVERSED, however, and this matter is REMANDED for additional proceedings consistent with this opinion.
 
 
 
 *
 Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 Participation in the Program was a mandatory condition of employment for Lee Way's nonunion, salaried employees
 
 
 [2]
 Plaintiffs also seek $65 million from the defendants for fraud in the loss of their jobs and conversion of credit union and insurance deductions and $120 million in exemplary damages. Doc. 111 (Second Amended Complaint) at 49
 
 
 [3]
 The Pepsico defendants are Pepsico, Inc., S.E. Schroder, James English, Lawrence Dickie, Judy Norman-Davis and Richard Campbell
 
 
 [4]
 Several courts have found that this fact alone is sufficient to establish that an ESOP interest is stock and hence is a security without reference to Howey's test for the existence of an investment contract. See Harris, [1987-88 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 93,772 at 98,623; Hood, 762 F.Supp. at 1289-90; Foltz v. U.S. News & World Report, Inc., 627 F.Supp. 1143, 1159 (D.D.C.1986). Because plaintiffs have not pleaded or argued that their ESOP interests might be a security under this alternate theory, we do not address it
 
 
 [5]
 This determination is also consistent with the SEC's conclusion that "[a]n employee who is given a choice whether to participate in a voluntary pension plan, and decides to contribute a portion of his earnings or savings to such plan, has clearly made an investment decision, particularly when his contribution is invested in securities issued by his employer." SEC Release No. 33-6188 at 2073-10
 
 
 [6]
 CL itself recognized the close link between these concepts when it stated in its Lee Way solicitation materials that "a principal purpose for instituting the [Wage Reduction] Program is to provide a possibility for a return of the companies['] profitability and to provide employees with a share of any such profits." Defendants' Ex. 20, Subex. D at 2
 
 
 [7]
 The district court's holding that the CL ESOP was an involuntary plan and hence not an investment contract because of the plaintiffs' desire to save their jobs is also troubling because it essentially permits employers to avoid regulation under the Securities Acts (assuming the ESOP interest would otherwise meet the Howey test) simply by persuading employees that they must contribute to the ESOP if they want to preserve the company and their jobs. The employees, however, may not have sufficient information available to them to test their employer's representations concerning the company's financial condition. It seems particularly inappropriate, therefore, to determine whether the employees' interest is a security subject to the protective disclosure and anti-fraud provisions of the Securities Acts on the basis of the employees' acceptance of these representations
 
 
 [8]
 As this language suggests, Howey's requirement that profits "come solely from the efforts of others" is not read literally to prevent formation of an investment contract when the investor contributes some effort to the enterprise. See, e.g., Meyer v. Dans un Jardin, S.A., 816 F.2d 533, 535 (10th Cir.1987); SEC v. Aqua-Sonic Prods. Corp., 687 F.2d 577, 584 (2d Cir.), cert. denied, 459 U.S. 1086, 103 S.Ct. 568, 74 L.Ed.2d 931 (1982)
 
 
 [9]
 The district court's reliance on Cunha, see 1988 Order at 14, is misplaced for this reason
 
 
 [10]
 Most of these cases concerned defined benefit plans that pay fixed or determinable benefits based on factors such as the age at which a participant retires, see SEC Release No. 33-6118 at 2073-7, rather than defined contribution plans, such as the CL ESOP, that provide varying benefits based on factors such as the amount of plan contributions and the plan's investment success. See, e.g., Coward, 686 F.2d at 1236-37; Cunha, 545 F.Supp. at 99-100; Tanuggi, 471 F.Supp. at 1214, 1216. The only two courts that appear to have considered whether employee interests in a voluntary, contributory defined contribution plan might satisfy the Howey test held that they did not because of plan characteristics that are not present here. See O'Neil, 538 F.Supp. at 1031 (in a "close question," no security found to exist because (1) plan's staggered vesting requirements made benefits dependent on length of service, (2) significant plan profits derived from other employees withdrawing from the plan before becoming fully vested, (3) amount of earnings on employee contributions was capped and (4) amount of benefits was significantly dependent on amount of employer, rather than employee, contribution); Newkirk, [1979-80 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 97,216 (apparently holding plan interests were not securities because majority of plan's income was derived solely from employer contributions and amount of benefits was dependent on employees' success in meeting vesting requirements)
 
 
 [11]
 The Daniel Court's holding regarding the third Howey requirement, concerning profit from the efforts of others, is also inapplicable here due to the differences between the CL ESOP and the pension plan at issue in Daniel. In Daniel, the pension fund's "income" consisted almost entirely of employer contributions, rather than profits generated by the efforts of the fund managers, and the employee's expectation of profits, if any, depended primarily on his or her success in meeting the plan's vesting requirements, rather than on the fund's investment success. 439 U.S. at 561-62, 99 S.Ct. at 797-98. In this case, in contrast, the plaintiffs' right to the stock they received via the CL ESOP vested immediately and any profits they received on their ESOP investment were directly attributable to the efforts of CL and its managers
 
 
 [12]
 Defendants also cite In re Crippin, 877 F.2d 594 (7th Cir.1989), Childers v. Northwest Airlines, Inc., 688 F.Supp. 1357 (D.Minn.1988) and Bauman v. Bish, 571 F.Supp. 1054 (N.D.W.Va.1983) for the proposition that an employee's acceptance of a wage reduction in return for participation in an ESOP is an employment/compensation agreement rather than an investment in a security. Each of these cases is distinguishable. In both Bauman and Childers, the district courts held that an employee's acceptance of a wage reduction as part of a modified, union-approved compensation package that included participation in an ESOP did not constitute "value" sufficient to establish the "sale" of an ESOP interest under the Securities Acts. See Childers, 688 F.Supp. at 1363; Bauman, 571 F.Supp. at 1064. These cases are thus distinguishable in that employee-participants in these plans did not make individual investment decisions and in the courts' examination of their investment in the context of determining whether a sale occurred rather than whether a security existed in the first instance. See id. In re Crippin is even more readily distinguishable because it considered the effect of an employee's wage-reduction-for-ESOP-interest exchange only for purposes of determining whether the exchange was an executory contract that could be rejected as part of an employee-participant's bankruptcy. 877 F.2d at 596-97. To the extent these cases are not distinguishable, we also simply disagree that plaintiffs' wage concessions in this case were not investments that led to the creation of investment contracts under Howey
 
 
 [13]
 The SEC first stated this position as early as 1941, Opinions of SEC Assistant General Counsel, [1941-44 Transfer Binder] Fed.Sec.L.Serv. (CCH) p 75,195 (1941), reprinted in 1 Pens.Plan Guide (CCH) p 1104.101 at 2404-05 (1986) (stating that certain voluntary contributory employee stock investment plans were investment contracts subject to federal securities regulation); see Hearings on Proposed Amendments to the Securities Act of 1933 and to the Securities Exchange Act of 1934 Before the House Committee on Interstate and Foreign Commerce, 77th Cong., 1st Sess. 894-97 (1941) (testimony of Commissioner Purcell), and reiterated this view in 1953 and 1962, see Letter to CCH from Assistant Director, Division of Corporation Finance, Securities Exchange Commission (May 12, 1953), 1 Pens. Plan Guide (CCH) p 1104.102 at 2406 (1986); Letter to CCH from Chief Counsel, Division of Corporation Finance, Securities Exchange Commission (Aug. 1, 1962), 1 Pens.Plan Guide (CCH) p 1104.103 at 2406 (1986), and again in 1979 in successful opposition to a proposal to amend ERISA and the Securities Acts to exclude interests in employee benefits plans from the Securities Acts' antifraud provisions. See Hearings on S. 209 Before the Senate Committee on Human Resources, 96th Cong., 1st Sess. 657-74 (1979) (statement of Harold M. Williams, Chairman, Securities and Exchange Commission). The SEC again expressed its view that employee interests in voluntary contributory employee benefit plans are securities in two releases issued after and in response to the Supreme Court's decision in Daniel. See SEC Release No. 33-6188 at 2073-9; SEC Release No. 33-6288 at 2073-31
 
 
 [14]
 The latter reference to the amount of the plan's investment in the employer's securities apparently relates to the requirements for establishing the plan's exemption from the Securities Act registration requirements under the 1970 amendment described above. See 15 U.S.C. Sec. 77c(a)(2). It has no apparent relevance to the definition of employee benefit plans subject to the Securities Acts' antifraud provisions
 
 
 [15]
 While this appeal was pending, the Supreme Court vacated the judgment in Holloway I and remanded the case for further consideration in light of Reves v. Ernst & Young, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990). See Peat Marwick Main & Co. v. Holloway, --- U.S. ----, 110 S.Ct. 1314, 108 L.Ed.2d 490 (1990). Reves, like Holloway I, concerned the circumstances under which an instrument categorized as a "note" will be considered a "security" within the meaning of the federal securities laws. See Reves, 110 S.Ct. at 948; Holloway I, 879 F.2d at 777. In Reves, the Court adopted a "family resemblance" test for determining when a note is a "security." Reves, 110 S.Ct. at 951. This test initially presumes that a note is a security, but provides that the presumption may be rebutted by reference to four factors, the last of which is "whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." Id. at 951-52. In Holloway I, this court employed a similar test, but structured it in two parts, with the first part looking solely at the "security" question, while the second, as described above, focused on the consequences of any alternate federal regulation. See Holloway I, 879 F.2d at 775-83, 783-88
 On remand of Holloway I, we reaffirmed our earlier judgment upon finding that our original analysis had adequately addressed the four Reves factors. Holloway v. Peat, Marwick, Mitchell & Co., 900 F.2d 1485, 1487-88 (10th Cir.) (Holloway II ), cert. denied, --- U.S. ----, 111 S.Ct. 386, 112 L.Ed.2d 396 (1990). In so doing, we implicitly adopted our earlier analysis in Holloway I. See id. at 1488 & n. 1. Because Reves contains no language undercutting the premise of Holloway I's federal regulatory analysis, which is that the existence of alternate federal regulation will in some cases prevent an erstwhile security from being regulated under the Securities Acts, see Holloway I, 879 F.2d at 778, 783, we find that this analysis is still valid and may be relied upon in this case. See Marine Bank, 455 U.S. at 558-59, 102 S.Ct. at 1224-25 (federal bank regulations providing investors with abundant protection from fraud sufficient to prevent bank certificate of deposit from being subject to Securities Acts); Daniel, 439 U.S. at 569-70, 99 S.Ct. at 801-02 (ERISA regulation of compulsory, noncontributory pension plan one factor in holding that plan was not a security).
 
 
 [16]
 ERISA defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. Sec. 1002(7). For an individual to be a "participant" under the "may become eligible" portion of this definition, the individual "must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989). ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. Sec. 1002(8)
 
 
 [17]
 This point is emphasized by the fact that ERISA only requires a plan administrator to provide plan information to new plan participants within 90 days after the individual joins the plan. 29 U.S.C. Sec. 1024(b)
 
 
 [18]
 Schedule A requires the issuer of a security to provide a potential investor, among other things, with a copy of its most recent balance sheet and profit and loss statement. 15 U.S.C. Sec. 77aa(25), (26)
 
 
 [19]
 Numerous other courts have held that ERISA does not preempt state law claims for fraud in the inducement because such claims are too tenuous and remote to the ERISA plan to be "related to" the plan as required for preemption under section 1144 of the statute. See, e.g., Perkins v. Time Ins. Co., 898 F.2d 470, 473 (5th Cir.1990); Martin v. Pate, 749 F.Supp. 242, 246 (S.D.Ala.1990); Greenblatt v. Budd Co., 666 F.Supp. 735, 742 (E.D.Pa.1987); Miller v. Lay Trucking Co., 606 F.Supp. 1326, 1333 (N.D.Ind.1985). This precedent again suggests that ERISA is not directed to prevention of the sort of pre-participation fraud and misrepresentation that would be actionable under the Securities Acts
 
 
 [20]
 As the Pepsico defendants point out in their supplemental brief, Supplemental Brief for Certain Appellees at 18, this court has previously held that ERISA permits the remedies of rescission and restitution in at least some circumstances. See Eaves v. Penn, 587 F.2d 453, 462 (10th Cir.1978). In that case, however, the court only approved these remedies in the context of a request by plan participants to rescind a plan amendment and to restore funds lost to the plan as a result of the amendment. See id. at 463. Eaves did not, therefore, concern an attempt under ERISA to rescind participation in a plan or to recover employee contributions to a plan and is thus readily distinguishable from this case
 
 
 [21]
 It is possible that the Pepsico defendants could qualify as "parties in interest" with CL, see 29 U.S.C. Sec. 1002(14) (defining "party in interest"), such that certain transactions between these parties and CL, as plan administrator, would constitute violations of the statute potentially subject to redress by a court. See Nieto, 845 F.2d at 873-74. The parties to this action did not address this possibility, however, and we cannot address it sua sponte under the present record
 
 
 [22]
 In their supplemental brief, plaintiffs also suggest that relief may not be available to them under ERISA because there is a split of authority as to whether an employee may bring an ERISA action challenging oral or written misrepresentations regarding an ERISA-regulated plan. See Appellants' Supplemental Brief on the Impact of ERISA at 21. In each of the cases cited, however, the issue was whether a plan participant could sue to enforce alleged ERISA plan provisions that were stated either orally or in the plan's summary description but conflicted with the terms of the plan itself. See, e.g., Straub v. Western Union Tel. Co., 851 F.2d 1262, 1265 (10th Cir.1988) (oral modification); Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir.1986) (same); Gors v. Venoy Palmer Market, Inc., 578 F.Supp. 365, 368 (E.D.Mich.1984) (conflict between summary description and plan itself); O'Brien v. Sperry Univac, 458 F.Supp. 1179, 1180 (D.D.C.1978) (same). In this case, plaintiffs are suing to rescind their participation in a plan based on alleged oral misrepresentations, rather than suing to enforce those representations. Thus, to the extent that there is a split among the circuits regarding the effect of oral or written representations on plan terms and conditions, it is irrelevant to the issue before this court
 
 
 [23]
 We disagree with the SEC's contention, however, that all voluntary, contributory employee benefit plans qualify as investment contracts under Howey. The voluntary, contributory aspect of such plans satisfies Howey's "investment of money" requirement, but is not determinative of each plan's compliance with Howey's final requirement that profits from this investment result from the efforts of others. See Howey, 328 U.S. at 301, 66 S.Ct. at 1104. Depending on the specific terms of the plan, therefore, some voluntary, contributory employee interests will not qualify as investment contracts under the Howey test. See n. 10 supra and accompanying text
 
 
 [24]
 As plaintiffs point out, it makes little sense for Congress to have permitted the states this latitude while intending that ERISA preempt federal securities regulation of interests in these same types of plans
 
 
 [25]
 Of course, neither the parties nor the district court is precluded for revisiting these pleading and evidentiary issues on remand of this matter